℘JS 44  (Rev. 11/04)                           **CIVIL COVER SHEET**                                    **APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**
IDS PROPERTY CASUALTY INSURANCE COMPANY

**DEFENDANTS**
MICHAEL SCHONEWOLF, JR., JOHN J. SWEENEY, NATIONAL EVENT SERVICES, INC., et al.

**(b)**  County of Residence of First Listed Plaintiff   DePere, WI
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Bucks County, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Chester F. Darlington, Esquire, 1601 Market Street, 16th Floor, Philadelphia, PA 19103; telephone no. 215-665-3363

Attorneys (If Known)
Unknown

**II.  BASIS OF JURISDICTION**      (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question (U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III.  CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  NATURE OF SUIT**  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| X  110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 330 Federal Employers' Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893  Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty |  | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | |
| | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 555 Prison Condition | | |

**V.  ORIGIN**      (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI.  CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing  (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§1332, 1441 and 1446
Brief description of cause:
breach of contract, bad faith pursuant to 42 Pa. C.S.A. 8371

**VII.  REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $  In excess $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   No

**VIII.  RELATED CASE(S) IF ANY**      (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE   October 16, 2013

SIGNATURE OF ATTORNEY OF RECORD

OCT 16 2013

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse  (Rev. 11/04)

APPENDIX I

**CASE MANAGEMENT TRACK DESIGNATION FORM**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IDS PROPERTY CASUALTY INSURANCE COMPANY, | : |
| | : |
| | : |
| vs. | : |
| | : |
| MICHAEL SCHONEWOLF, JR., et al. | : |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits                       ( )

( c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)

_October 16, 2013_                    _____        **Chester F. Darlington, Esquire**
                                      **Attorney-at-law**              **Attorney for Plaintiff**

**(215) 665-3363**                    **(215) 561-6661**               **darlington@bbs-law.com**
**Telephone**                         **FAX Number**                   **E-Mail Address**          OCT 16 2013

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:____3500 Packerland Drive, DePere, WI 54115_____

Address of Defendant:__856 Meadow Wood Lane, Warminster, PA 18974_____

Place of Accident, Incident or Transaction:_____ *(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes    No

Does this case involve multidistrict litigation possibilities?     Yes☐     No X

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes☐     No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes☐     No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes☐     No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION

_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 10-16-13          _____          790 70
                              Attorney-at-Law                              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  October 16, 2013          **Chester F. Darlington, Esquire**          79070
                              Attorney-at-Law                              Attorney I.D.#

CIV. 609 (4/03)                                                            OCT 16 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| **IDS PROPERTY CASUALTY** | : | |
| **INSURANCE COMPANY** | : | |
| 3500 Packerland Drive | : | |
| De Pere, WI 54115 | : | |
| | : | |
| | : | |
| v. | : | NO. |
| | : | |
| **MICHAEL SCHONEWOLF, JR.** | : | |
| 856 Meadow Wood Lane | : | |
| Warminster, PA 18974 | : | |
| and | : | |
| **JOHN J. SWEENEY** | : | |
| 220 South Lenola Road, Apt. B-301 | : | |
| Maple Shade, NJ 08052 | : | |
| and | : | |
| **NATIONAL EVENT SERVICES, INC.** | : | |
| 501 Baily Road | : | |
| Yeadon, PA 19050 | : | |
| and | : | |
| **LIVE NATION ENTERTAINMENT, INC.** | : | |
| 9348 Civic Center Drive | : | |
| Beverly Hills, CA 90210 | : | |
| and | : | |
| **BEASLEY BROADCAST GROUP, INC.** | : | |
| 3033 Riviera Drive, Suite 200 | : | |
| Naples, FL 34103 | : | |
| and | : | |
| **CENTRAL PARKING SYSTEMS, INC.** | : | |
| 2401 21ST Avenue South | : | |
| Nashville, TN 37212 | : | |
| and | : | |
| **DAN LAGRECA** | : | |
| 1280 York Road | : | |
| Warminister, PA 18974 | : | |
| and | : | |
| **RORY CLARK** | : | |
| 1267 Boyd Road | : | |
| Warminster, PA 18974 | : | |
| and | : | |

**RYAN TOTH**                        :
1031 Eagle Road                      :
Huntingdon Valley, PA 19006          :
and                                  :
**DANIEL BAMBRICK**                  :
145 Centennial Road                  :
Warminster, PA 18974                 :

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, IDS Property Casualty Insurance Company, by way of complaint for declaratory judgment, avers as follows:

1.      Plaintiff, IDS Property Casualty Insurance Company (hereinafter "IDS"), is an insurance company organized and existing under the laws of the State of Wisconsin with a principal place of business located at the address stated in the above caption.

2.      Defendant Michael Schonewolf, Jr. is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at the address stated in the above caption.

3.      Defendant John J. Sweeney is an adult individual and citizen of the State of New Jersey who resides at the address stated in the above caption.

4.      Defendant National Event Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at the address stated in the above caption.

5.      Defendant Live Nation Entertainment, Inc. is a corporation organized and existing under the laws of the State of California with a principal place of business located at the address stated in the above caption.

6.     Defendant Beasley Broadcast Group, Inc. is a corporation organized and existing under the laws of the State of Florida with a principal place of business located at the address stated in the above caption.

7.     Defendant Central Parking Systems, Inc. is a corporation organized and existing under the laws of the State of Tennessee with a principal place of business located at the address stated in the above caption.

8.     Defendant Dan Lagreca is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at the address stated in the above caption.

9.     Defendant Rory Clark is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at the address stated in the above caption.

10.    Defendant Ryan Toth is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at the address stated in the above caption.

11.    Defendant Daniel Bambrick is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at the address stated in the above caption.

12.    This action is for a declaratory judgment to determine an actual and existing controversy among the parties as more particularly set forth herein.

13.    This Honorable Court has jurisdiction over this matter.

14.    Venue in this judicial district is proper.

15.    On or about July 29, 2013, John J. Sweeney filed a civil action complaint against Michael Schonewolf, Jr. and the other defendants averred above in the Court of Common Pleas of Philadelphia County at docket number 13070384 (hereinafter "the lawsuit"). The complaint in the lawsuit alleged the following, in pertinent part:

3

12. On or about June 2, 2012, Plaintiff, John J. Sweeney, was an invitee at an event designated parking lot located at 1 Harbor Blvd. in Camden, New Jersey, which is owned, operated and/or controlled by Central Parking, to attend the *WXTU 28th Anniversary Show* at the Susquehanna Center in Camden, New Jersey, when he was continuously and violently beaten and kicked about his head and body by Michael Schonewolf, Jr.; Dan Lagreca; Rory Clark; Ryan Toth; and, Daniel Bambrick causing him to sustain severe and permanent injuries set forth at length herein.

\*   \*   \*

16. Michael Schonewolf, Jr., Dan Lagreca, Rory Clark, Ryan Toth, and Daniel Bambrick were all attendees of the concert and were all under the age of twenty one at the time and were permitted to engage in underage drinking and other illicit and unruly behavior.

17. The uncontrolled and unmonitored consumption of alcohol on the premises, including those who were visibly intoxicated and underage; the tolerance and ignorance of illegal drug use; the complete lack of basic security and adequate security and logistical measures to control the crowd; the creation, promotion and production of the event that created an environment of mayhem and violence; the failure of the property owners, organizer, promoter and security company to provide a safe environment for invitees such as Plaintiff and the underage drinking, intoxication and subsequent negligent and reckless actions of the aforementioned assailants were all substantial factors in causing harm to the Plaintiff and also more than one hundred other patrons that attended the event which also resulted in hundreds of arrests of other attendees.

A true copy of the complaint in the lawsuit is attached hereto at Exhibit "A."

16. In count V, the complaint avers the following against Michael Schonewolf, Jr., in pertinent part:

60. At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU 28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

61. The negligence, carelessness and recklessness on the pert of Defendant, Michael Schonewolf, Jr., consisted of the following;

(a) consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have

4

known would pose a high degree of risk of injury and danger to other patrons;

(b)     becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)     becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)     creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)     joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

62.     By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

63.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

64.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

65.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John S. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

66.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

5

See Exhibit "A" hereto.

17.    IDS issued a homeowners policy bearing number HI00977297 with a policy period from September 13, 2011 to September 23, 2012 to named insureds Michael Schonewolf and Donna Schonewolf (hereinafter "the policy").  A true copy of the policy is attached hereto at Exhibit "B."

18.    The policy contains the following definitions, in pertinent part:

*        *        *

**Occurrence** means an accident which is unexpected or unintended from **your** standpoint resulting in **bodily injury** or **property damage** during the policy period. It also includes repeated or continuous exposure to substantially the same general harmful conditions.

See Exhibit "B."

19.    The policy contains the following insuring agreement, in pertinent part:

**Personal Liability Coverage**
**We** will pay all sums arising out of any one **occurrence** which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this policy.  If a claim is made or suit is brought against the **insured person** for liability under this coverage, we will defend the **insured person** at **our** expense, using lawyers of **our** choice.  **We** are not obligated to defend after **we** have paid an amount equal to the limit of **our** liability.  **We** may investigate or settle any claim or suit as **we** think appropriate.

See Exhibit "B."

20.    The policy contains the following exclusion, in pertinent part:

Under Personal Liability Coverage and Medical Payments to Others Coverage, **we** do not cover:

*        *        *

5.    **bodily injury** or **property damage** expected or intended by one or more **insured persons**, even if the **bodily injury** or **property damage**:

6

a)    is of a different kind, quality or degree than initially expected or intended; or

b)    is sustained by a different person, entity, real or personal property than initially expected or intended.

See Exhibit "B."

21.    The complaint and lawsuit were tendered to IDS on behalf of Michael Schonewolf, Jr.

22.    IDS is currently defending Michael Schonewolf, Jr. in the lawsuit under a reservation of rights.

23.    As set forth below, there is no coverage under the policy for the lawsuit.

24.    As set forth below, IDS does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit.

25.    As set forth below, IDS requests a declaration from the court that it does not owe Michael Schonewolf, Jr. coverage under the policy for the lawsuit.

26.    As set forth below, IDS requests a declaration from the court that it does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit.

## COUNT I

27.    IDS incorporates the averments in paragraphs 1-26 above as if fully set forth at length herein.

28.    The policy provides coverage for an "occurrence." An "occurrence" is defined as "an accident which is unexpected or unintended from [the insured's] standpoint."

29.    The allegations in the complaint do not allege an "occurrence." Instead, the allegations assert intentional conduct from an assault.

7

30.    Moreover, the circumstances giving rise to the allegations in the complaint were not an "occurrence." Instead, the circumstances arose from intentional conduct and an assault.

31.    As such, there is no coverage under the policy because the policy does not cover intentional conduct and an assault.

32.    IDS does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit.

33.    IDS does not owe Michael Schonewolf, Jr. coverage under the policy for the lawsuit.

WHEREFORE, IDS requests that the court enter judgment as follows:

a)    Declaring that IDS does not owe Michael Schonewolf, Jr. coverage under the policy for the lawsuit;

b)    Declaring that IDS does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit;

c)    Granting judgment in IDS' favor and against all the defendants; and

d)    Awarding IDS its costs, fees and any other relief that the court deems just and/or equitable.

## COUNT II

34.    IDS incorporates the averments in paragraphs 1-33 above as if fully set forth at length herein.

35.    The policy contains an exclusion which excludes "bodily injury" expected or intended from the standpoint of the insured.

36.    The allegations in the complaint allege "bodily injury" that was expected or intended by the insured.

37.    Moreover, the circumstances giving rise to the allegations in the complaint show conduct where "bodily injury" was expected or intended.

38.    As such, there is no coverage under the policy because the policy does not cover "bodily injury" that was expected or intended.

39.    IDS does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit.

40.    IDS does not owe Michael Schonewolf, Jr. coverage under the policy for the lawsuit.

WHEREFORE, IDS requests that the court enter judgment as follows:

a)    Declaring that IDS does not owe Michael Schonewolf, Jr. coverage under the policy for the lawsuit;

b)    Declaring that IDS does not owe Michael Schonewolf, Jr. a duty to defend or a duty to indemnity for the lawsuit;

c)    Granting judgment in IDS' favor and against all the defendants; and

d)    Awarding IDS its costs, fees and any other relief that the court deems just and/or equitable.

9

BENNETT, BRICKLIN & SALTZBURG LLC

Date: 10-15-13

BY:_____
Daniel Moraglia
Chester F. Darlington
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 665-3363 telephone
(215) 561-6661 facsimile
darlington@bbs-law.com

Attorneys for plaintiff

# EXHIBIT "A"

NOTICE TO PLEAD
TO: Defendant
You are hereby notified to file a
written response to the enclosed
Complaint within twenty (20) days
from the date of service hereof or a
judgment may be entered against
you.

*Richard C. H*
Richard J. Hollawell, Esquire
Attorney for Plaintiff

THIS IS NOT AN
ARBITRATION CASE. AN
ASSESSMENT OF DAMAGES
IS REQUIRED. JURY TRIAL DEMANDED.

**CONSOLE & HOLLAWELL, P.C.**
By:    Richard J. Hollawell, Esquire
Attorney I.D. No.  88094
Five Greentre Centre
525 Route 73 North, Suite 117
Marlton, NJ 08053
rhollawell@consoleandhollawell.com
(856) 778-5500
Attorneys for Plaintiff

| | | |
|---|---|---|
| JOHN J. SWEENEY<br>220 South Lenola Road, Apt. B-301<br>Maple Shade, NJ 08052 | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
|                        Plaintiff | : | |
| | : | |
|       vs. | : | CIVIL TRIAL DIVISION |
| | : | |
| NATIONAL EVENT SERVICES, INC.<br>501 Baily Road<br>Yeadon, PA 19050 | : | JUNE TERM 2013<br><br>NO. |
| | : | |
| LIVE NATION ENTERTAINMENT, INC.<br>9348 Civic Center Drive<br>Beverly Hills, CA 90210 | : | **JURY TRIAL DEMANDED** |
| | : | |
| BEASLEY BROADCAST GROUP, INC.<br>3033 Riviera Drive, Suite 200<br>Naples, FL 34103 | : | |
| | : | |
| CENTRAL PARKING SYSTEMS, INC.<br>2401 21ST Avenue South<br>Nashville, TN 37212 | : | |
| | : | |
| MICHAEL SCHONEWOLF, JR.<br>856 Meadow Wood Lane<br>Warminster, PA 18974 | : | |
| | : | |
| DAN LAGRECA<br>1280 York Road<br>Warminster, PA 18974 | : | |

RORY CLARK                                    :
1267 Boyd Road                                :
Warminster, PA 18974-2260                     :
                                              :
RYAN TOTH                                     :
1031 Eagle Road                               :
Huntingdon Valley, PA 19006-1218             :
                                              :
DANIEL BAMBRICK                               :
145 Centennial Road                           :
Warminster , PA 18974-5404                    :
                            Defendants        :

---

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you without any further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partir de la feche de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITAABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| PHILADELPHIA BAR ASSOCIATION<br>Lawyer Referral and Information Service<br>1101 Market Street, 11th Floor<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6300 | ASSOCIACION DE LICENCIADOS DE FILADELPHIA<br>Servicio De Referencia E Informacicion Legal<br>1101 Market Street, 11th Floor<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6300 |

Case ID: 130703834

**CONSOLE & HOLLAWELL, P.C.**
By:     Richard J. Hollawell, Esquire
Attorney I.D. No.  88094
Five Greentre Centre
525 Route 73 North, Suite 117
Marlton, NJ 08053
rhollawell@consoleandhollawell.com
(856) 778-5500
Attorneys for Plaintiff

| JOHN J. SWEENEY | : | COURT OF COMMON PLEAS |
|  Plaintiff | : | PHILADELPHIA COUNTY |
|  | : |  |
| vs. | : |  |
|  | : |  |
| NATIONAL EVENT SERVICES, INC. ; | : | CIVIL TRIAL DIVISION |
| LIVE NATION ENTERTAINMENT, INC.; | : |  |
| BEASLEY BROADCAST GROUP, INC.; | : | JUNE TERM 2013 |
| CENTRAL PARKING SYSTEMS, INC.; | : |  |
| MICHAEL SCHONEWOLF, JR.; | : | NO. |
| DAN LAGRECA; RORY CLARK; | : |  |
| RYAN TOTH; and, DANIEL BAMBRICK | : |  |
|  Defendants | : |  |

## COMPLAINT

Plaintiff, John J. Sweeney,  by and through his attorney, Richard J. Hollawell, Esquire, states that

he has a cause of action against Defendants, National Event Services, Inc.; Live Nation Entertainment,

Inc.; Beasley Broadcasting Group, Inc.; Central Parking Systems, Inc.; Michael Schonewolf, Jr.; Dan

Lagreca; Rory Clark; Ryan Toth; and, Daniel Bambrick and in support thereof avers the following:

## PARTIES

1.      Plaintiff, John J. Sweeney, is an adult individual residing at the address set forth above.

2.      Defendant, National Event Services, Inc. (hereinafter "NES"), is a corporation or other

similar business entity that maintains its principal place of business at 501 Baily Road, Yeadon, PA

19050 and regularly and continuously conducts business in Philadelphia County  by providing security

services for concerts and other local entertainment events.

Case ID: 130703834

3.      Defendant, Live Nation Entertainment, Inc. (hereinafter "Live Nation"), is a corporation or other similar business entity that maintains its principal place of business at 9348 Civic Center Drive, Beverly Hills, CA 90210 and regularly and continuously conducts business in Philadelphia County by organizing and producing concerts and selling tickets for its concerts in Philadelphia.

4.      Defendant, Beasley Broadcast Group, Inc. (hereinafter "Beasley"), is a corporation or other similar business entity that maintains its principal place of business at 3033 Riviera Drive, Suite 200, Naples, FL 34103 and regularly and continuously conducts business in Philadelphia County by operating its Philadelphia based radio station, WXTU, and by promoting Philadelphia and New Jersey based concerts to residents of Philadelphia.

5.      Defendant, Central Parking Systems, Inc. (hereinafter "Central Parking"), is a corporation or other similar business entity that maintains its principal place of business at 2401 21st Avenue South, Nashville, TN 37212 and regularly and continuously conducts business in Philadelphia County by operating its multiple public parking garages throughout the city.

6.      Defendant, Michael Schonewolf, Jr., upon information and belief, is an adult individual residing at the above stated address.

7.      Defendant, Dan Lagreca, upon information and belief, is an adult individual residing at the above stated address.

8.      Defendant, Rory Clark, upon information and belief, is an adult individual residing at the above stated address.

9.      Defendant, Ryan Toth, upon information and belief, is an adult individual residing at the above stated address.

10.     Defendant, Daniel Bambrick, upon information and belief, is an adult individual residing at the above stated address.

## JURISDICTION AND VENUE

11.    Jurisdiction is proper in Pennsylvania, and venue is proper in Philadelphia County, as some or all of the commercial Defendants regularly and continuously conduct business in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

## CHRONOLOGY OF FACTS

12.    On or about June 2, 2012, Plaintiff, John J. Sweeney, was an invitee at an event designated parking lot located at 1 Harbor Blvd. in Camden, New Jersey, which is owned, operated and/or controlled by Central Parking, to attend the *WXTU 28th Anniversary Show* at the Susquehanna Center in Camden, New Jersey, when he was continuously and violently beaten and kicked about his head and body by Michael Schonewolf, Jr.; Dan Lagreca; Rory Clark; Ryan Toth; and, Daniel Bambrick causing him to sustain severe and permanent injuries set forth at length herein.

13.    Beasley owned, operated and/or controlled WXTU, which sponsored, advertised and sold tickets for the *WXTU 28th Anniversary Show*.

14.    The *WXTU 28th Anniversary Show* was created, organized, promoted and produced by Live Nation.

15.    The security for the *WXTU 28th Anniversary Show* was provided by NES, a security firm that Live Nation hired to provide security services on its behalf at the Susquehanna Center and surrounding event designated parking lots.

16.    Michael Schonewolf, Jr., Dan Lagreca, Rory Clark, Ryan Toth, and Daniel Bambrick were all attendees of the concert and were all under the age of twenty one at the time and were permitted to engage in underage drinking and other illicit and unruly behavior.

17.    The uncontrolled and unmonitored consumption of alcohol on the premises, including those who were visibly intoxicated and underage; the tolerance and ignorance of illegal drug use; the

complete lack of basic security and adequate security and logistical measures to control the crowd; the creation, promotion and production of the event that created an environment of mayhem and violence; the failure of the property owners, organizer, promoter and security company to provide a safe environment for invitees such as Plaintiff and the underage drinking, intoxication and subsequent negligent and reckless actions of the aforementioned assailants were all substantial factors in causing harm to the Plaintiff and also more than one hundred other patrons that attended the event which also resulted in hundreds of arrests of other attendees.

## COUNT I
## JOHN J. SWEENEY VS. NATIONAL EVENT SERVICES, INC.

18.    Plaintiff incorporates by reference paragraphs 1 through 17 above as though the same were herein set forth at length.

19.    At the aforesaid time and place, Defendant, NES, was hired and paid to provide competent and adequate security for the *WXTU 28th Anniversary Show* that Plaintiff attended.

20.    At all times material hereto, Defendant acted or failed to act through its agents, servants, workmen and/or employees, who were then and there acting within the course and scope of their employment and in furtherance of the Defendant, NES' business.

21.    On the above date, Plaintiff was caused to suffer severe, painful and permanent injuries that were caused by the negligent, reckless and wanton acts or inactions of NES and its agent, servants and employees that failed to provide any basic or competent level of security and protection which it knew or had reason to know would create a significant risk of harm to invitees attending the concert.

22.    Defendant, NES, owed an affirmative duty to Plaintiff and all other patrons of the concert to provide proper security to protect Plaintiff and others like him from the obvious, significant and unreasonable harm that he sustained and Defendant consciously or recklessly disregarded the high degree

Case ID: 130703834

of risk its actions created.

23.    At all times material hereto, Defendant, NES, consciously and recklessly disregarded its duty to provide a safe environment for all patrons of the concert, including Plaintiff, by permitting an environment of violence and mayhem to exist, which created an unreasonably dangerous environment for Plaintiff and all patrons of the concert.

24.    Defendant failed in its duty to provide security for the concert in order to protect Plaintiff and all patrons of the concert and to provide a safe environment for them.

25.    The negligence, carelessness, recklessness and wantonness of Defendant, NES, consisted of the following:

(a)    failing to plan, implement and provide a basic and adequate level of security;

(b)    failing to properly train and supervise its security personnel;

(c)    failing to maintain crowd order as it was obligated and contracted to do under the terms of the agreement to provide security services;

(d)    allowing patrons who were visibly and obviously intoxicated to remain on the grounds of the concert arena and designated event parking areas;

(e)    failing to employ an adequate number of security guards with the ratio of security personnel to attendees being woefully inadequate and highly dangerous;

(f)    allowing an unruly and dangerous condition to exist without taking necessary and proper action;

(g)    failing to establish, monitor and administer programs and procedures designed to identify and deal with violent and rowdy behavior and prevent injuries and damages to patrons;

(h)    turning a blind eye to the dangerous and hazardous conditions for patrons and

others during the *WXTU 28th Anniversary Show*;

(i) allowing underage attendees to consume alcohol and other illegal substances that caused them to act in an erratically, violently and unruly, posing a high degree of risk for other attendees.

26. By reason of the negligence, carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

27. As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

28. As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

29. As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

30. As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, National Event Services, Inc. individually, jointly and/or severally, for damages in excess of Fifty Thousand

Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT II
## JOHN J. SWEENEY VS. LIVE NATION ENTERTAINMENT, INC.

31.    Plaintiff incorporates by reference paragraphs 1 through 30 above as though the same were herein set forth at length.

32.    At all times material hereto, Defendant created, produced, promoted and sold tickets for the *WXTU 28ᵗʰ Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

33.    At all times material hereto, Defendant acted or failed to act through its agents, servants, workmen and/or employees, who were then and there acting within the course and scope of their employment and in furtherance of the Defendant, Live Nation's business.

34.    Defendant, Live Nation, has a long history of improperly planning, overselling, not providing for crowd control, not providing basic and adequate security, allowing and ignoring underage drinking and illicit substance consumption at its concerts throughout the country before and after the subject matter that have led to numerous deaths and thousands of serious injuries to its invitees.

35.    The negligence, carelessness, recklessness and wantonness on the part of Defendant, Live Nation consisted of the following:

(a)    creating, producing and promoting an event that it knew or should have known would result in danger to the patrons of the event when it did not adequately plan and execute measures to provide for the general safety of invitees;

(b)    failing to provide adequate security and protection to business invitees at the

*WXTU 28th Anniversary Show* by allowing the ratio of security personnel to attendees to be woefully inadequate and highly dangerous to invitees;

(c) failing to act through its agents, servants or employees when it knew, or by the exercise of reasonable care should have known, that a hazardous and threatening condition existed with the propensity of harm to other patrons by not taking necessary steps to remove or reduce the hazard or threat;

(d) failing to establish, monitor and administer programs and procedures designed to identify and control violent and rowdy behavior and prevent assaults;

(e) condoning and allowing the sale, dispensing and consumption of alcohol or malt or brewed beverages without legal license to do so and to those who were visibly intoxicated and underage;

(f) failing to properly train and supervise its employees, agents, servants and patrons in safely planning and conducting an event involving the gathering of thousands of persons that it knew or should have known would pose a high degree of risk and injury to invitees;

(g) producing and promoting an event that it knew or should have known would create and result in a climate of violence and mayhem, ultimately leading to the serious injury of innocent invitees and other persons.

(h) over-booking and overselling its concerts and providing financial incentives to its other promoters to do so for its own financial gain when it knew it posed a significant risk of harm to its invitees.

36. By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or

all of which may be permanent in nature.

37.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

38.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

39.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

40.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Live Nation individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT III
## JOHN J. SWEENEY VS. BEASLEY BROADCASTING GROUP, INC.

41.    Plaintiff incorporates by reference paragraphs 1 through 40 above as though the same were

Case ID: 130703834

herein set forth at length.

42.    At all times material hereto, Defendant owned, operated and/or controlled WXTU, which sponsored the *WXTU 28ᵗʰ Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

43.    At all times material hereto, Defendant acted or failed to act through its agents, servants, workmen and/or employees, who were then and there acting within the course and scope of their employment and in furtherance of the Defendant, Beasley's business.

44.    The negligence and carelessness on the part of Defendant, Beasley consisted of the following:

(a)    creating, producing and promoting an event that it knew or should have known would result in danger to the patrons of the event when it did not adequately plan and execute measures to provide for the general safety of invitees;

(b)    failing to provide adequate security and protection to business invitees at the *WXTU 28ᵗʰ Anniversary Show* by allowing the ratio of security personnel to attendees to be woefully inadequate and highly dangerous to invitees;

(c)    failing to act through its agents, servants or employees when it knew, or by the exercise of reasonable care should have known, that a hazardous and threatening condition existed with the propensity of harm to other patrons by not taking necessary steps to remove or reduce the hazard or threat;

(d)    failing to establish, monitor and administer programs and procedures designed to identify violent and rowdy behavior and prevent assaults;

(e)    condoning and allowing the sale, dispensing and consumption of alcohol or malt or brewed beverages without legal license to do so and to those who were visibly

intoxicated and underage;

(f)    failing to properly train and supervise its employees, agents, servants and patrons in safely planning and conducting an event involving the gathering of thousands of persons that it knew or should have known would pose a high degree of risk and injury to invitees

(g)    negligently and carelessly creating, producing and promoting an event that it knew or should have known would create and result in a climate of violence and mayhem, ultimately leading to the insecurity of the patrons and other persons.

45.    By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

46.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

47.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

48.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

49.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Beasley individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT IV
## JOHN J. SWEENEY VS. CENTRAL PARKING SYSTEMS, INC.

50.    Plaintiff incorporates by reference paragraphs 1 through 49 above as though the same were herein set forth at length.

51.    Upon information and belief and at all times material hereto, Defendant, Central Parking System's Inc., owned, operated, maintained, managed, possessed, leased and/or controlled the parking lot located at 1 Harbour Boulevard, Camden, NJ.

52.    At all times material hereto, Defendant acted or failed to act through its agents, servants, workmen and/or employees, who were then and there acting within the course and scope of their employment and in furtherance of the Defendant's business.

53.    The negligence, carelessness and recklessness on the part of Defendant, Central Parking, consisted of the following:

(a)    failing to take any adequate reasonable measures to ensure that the *WXTU 28th Anniversary Show* would be a safe event for all invitees it knew would be attending and parking and gathering on its property;

(b)    failing to provide any and/or adequate security measures to protect its business

Case ID: 130703834

invitees that it knew would be parking and gathering on its property;

(c)   failing to act through its agents, servants or employees when it knew, or by the exercise of reasonable care should have known, that a hazardous and threatening condition existed with the propensity of harm to other patrons by not taking necessary steps to remove or reduce the hazard or threat;

(d)   enabling what it knew, or by the exercise of reasonable care should have known, to be a threatening or hazardous situation by promoting and allowing the consumption of alcohol by visibly intoxicated and underage patrons that posed a high degree of risk of injury and danger to other invitees;

(e)   failing to establish, monitor and administer programs and procedures designed to identify violent and rowdy behavior and prevent assaults on its property;

(f)   selling and dispensing alcohol or malt or brewed beverages without legal license to do so and to those underage and visibly intoxicated;

(g)   failing to properly train and supervise its employees, agents, servants in safely planning and conducting an event involving the gathering of thousands of persons that it knew or should have known would pose a high degree of risk and injury to invitees;

(h)   permitting a climate of violence and mayhem to exist on its property when defendant knew or should have known that such a dangerous climate posed a high degree of risk of injury and danger to other invitees.

54.   By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

55.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

56.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

57.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

58.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Central Parking Systems, Inc., individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT V
### JOHN J. SWEENEY VS. MICHAEL SCHONEWOLF, JR.

59.    Plaintiff incorporates by reference paragraphs 1 through 58 above as though the same were herein set forth at length.

Case ID: 130703834

60.    At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU 28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

61.    The negligence, carelessness and recklessness on the part of Defendant, Michael Schonewolf, Jr., consisted of the following:

(a)    consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk of injury and danger to other patrons;

(b)    becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)    becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)    creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)    joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

62.    By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

63.    As a direct result of the negligence, carelessness, recklessness and wantonness of the

Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

64.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

65.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

66.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Michael Schonewolf, Jr., individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT VI
## JOHN J. SWEENEY VS. DAN LAGRECA

67.     Plaintiff incorporates by reference paragraphs 1 through 66 above as though the same were herein set forth at length.

68.     At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU 28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

69.     The negligence, carelessness and recklessness on the part of Defendant, Dan Lagreca, consisted of the following:

(a)     consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk of injury and danger to other patrons;

(b)     becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)     becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)     creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)     joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

70.     By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

71.     As a direct result of the negligence, carelessness, recklessness and wantonness of the

Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

72.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

73.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

74.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Dan Lagreca, individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT VII
## JOHN J. SWEENEY VS. RORY CLARK

75.     Plaintiff incorporates by reference paragraphs 1 through 74 above as though the same were herein set forth at length.

76.     At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU*

Case ID: 130703834

*28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

77.    The negligence, carelessness and recklessness on the part of Defendant, Rory Clark, consisted of the following:

(a)    consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk of injury and danger to other patrons;

(b)    becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)    becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)    creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)    joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

78.    By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

79.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme

pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

80.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

81.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

82.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Rory Clark, individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

**COUNT VIII**
**JOHN J. SWEENEY VS. RYAN TOTH**

83.     Plaintiff incorporates by reference paragraphs 1 through 82 above as though the same were herein set forth at length.

84.     At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU 28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2,

Case ID: 130703834

2012.

85.    The negligence, carelessness and recklessness on the part of Defendant, Ryan Toth, consisted of the following:

(a)    consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk of injury and danger to other patrons;

(b)    becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)    becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)    creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)    joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

86.    By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

87.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's

pleasure.

88.     As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

89.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

90.     As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Ryan Toth, individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

## COUNT IX
### JOHN J. SWEENEY VS. DANIEL BAMBRICK

91.     Plaintiff incorporates by reference paragraphs 1 through 90 above as though the same were herein set forth at length.

92.     At all times material hereto, Defendant attended and attacked Plaintiff while at the *WXTU 28th Anniversary Show* at the Susquehanna Bank Center, 1 Harbour Boulevard, Camden, NJ on June 2, 2012.

93.    The negligence, carelessness and recklessness on the part of Defendant, Daniel Bambrick, consisted of the following:

(a)    consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk of injury and danger to other patrons;

(b)    becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;

(c)    becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;

(d)    creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff in becoming seriously injured.

(e)    joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

94.    By reason of the negligence carelessness, recklessness and wantonness of the Defendant as aforesaid, Plaintiff, John J. Sweeney, suffered severe and substantial injuries to his person, some or all of which may be permanent in nature.

95.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has undergone in the past and will in the future undergo extreme pain, suffering, disability, impairment, humiliation, embarrassment, disfigurement and loss of life's pleasure.

Case ID: 130703834

96.    As a direct result of the negligence, carelessness, recklessness and wantonness of the Defendant, Plaintiff, John J. Sweeney, has incurred necessary medical and hospital expenses, some or all of which may be recoverable in the instant action.

97.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, has been prevented from and may in the future be prevented from attending to and performing all or substantially all of his normal and usual duties, activities and occupations and has suffered, and will in the future continue to suffer, a severe loss of his earnings and earning capacity which losses are recoverable in this action.

98.    As a direct result of the negligence, carelessness, recklessness and wantonness of Defendant, Plaintiff, John J. Sweeney, sustained other damages to which he is entitled.

WHEREFORE, Plaintiff, John J. Sweeney, demands judgment against the Defendant, Daniel Bambrick, individually, jointly and/or severally, for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest, together with costs, punitive damages, interest, attorney fees and such other relief as permitted by law and as the Court may deem appropriate under the circumstances.

CONSOLE & HOLLAWELL, P.C.

BY: _Richard J Hollawell_
RICHARD J. HOLLAWELL
Attorney I.D. No. 88094
Attorneys for Plaintiff
525 Route 73 North, Suite 117
Marlton, NJ 08053
(856) 778-5500

Dated: 7/29/13

Case ID: 130703834

## VERIFICATION

I, Richard J. Hollawell., Esquire, hereby state that I am the attorney for Plaintiff, that I am authorized to make this Verification on behalf of Plaintiff in the foregoing action; that I have personal knowledge of the statements made in the foregoing Complaint; and that the statements made in Plaintiff's Complaint is true and correct to the best of my knowledge, information and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa.C.S.§4904 relating to unsworn falsification to authorities.

_7|29|13_
DATED

_Richard J. Hollawell_
RICHARD J. HOLLAWELL, ESQUIRE

Case ID: 130703834

# EXHIBIT "B"



**Ameriprise**
*Auto & Home Insurance*

Ameriprise Insurance Company
**IDS Property Casualty
Insurance Company**

3500 Packerland Drive
De Pere, WI 54115-9070

ameriprise.com/svc

  

STATE OF WISCONSIN)
                                )SS
BROWN COUNTY      )

    I, Glenn A. Sell, swear that I have confirmed our records as to the

insurance issued to Michael John Schonewolf and Donna M. Schonewolf,

856 Meadowood Lane, Warminster, PA 18974. I can verify that the

attached copy is a true and exact copy of policy **HI00977297**, which

indicates the coverage and limits effective 09/13/2011 through

09/13/2012.


_____
Glenn A. Sell
Underwriting Manager
IDS Property Casualty Insurance Company


Acknowledged before me
this 15 day of August,
20 13, at Green Bay, Brown County, WI.

_____
Notary Public, Brown County, WI.
My commission expires 5/19/17.

DANIEL MARTIN KOEHLER
Notary Public
State of Wisconsin


*Tgas*

2013/08/16.002126.25.002

**IDS Property Casualty Insurance Company**
3500 Packerland Drive
De Pere, WI 54115-9070

AMENDED DECLARATION
POLICY CHANGE EFFECTIVE DATE 10/13/2011
PENNSYLVANIA
SPECIAL
POLICY NUMBER: **HI00977297**
POLICY PERIOD: **09/13/2011 - 09/13/2012**
12:01 AM Standard Time

LAPSE IN COVERAGE: **NONE**

Michael John Schonewolf
Donna M Schonewolf
856 Meadowood Lane
Warminster, PA 18974

FOR CLAIMS SERVICE CALL:
(800) 872-5246
FOR CLIENT SERVICE CALL:
(800) 535-2001

| COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|
| **Property Protection** | | |
| Dwelling Coverage * | $277,700 | $686.00 |
| Other Structures Coverage | $27,800 | INCL |
| Personal Property Coverage (Replacement Cost) | $208,300 | INCL |
| Additional Living Expense and Loss of Rents | $55,500 | INCL |
| | Subject to $2,000 Deductible | |
| **Personal Liability Protection** | | |
| Personal Liability Coverage | $500,000    per Occurrence | $31.00 |
| Medical Payments to Others Coverage | $5,000    per Person | |
| | No Deductible Applies | |
| **Additional Charges and Credits** | | |
| CREDIT APPLIED - MAXIMUM 50% | | -$172.00 |
| ALARM - SMOKE DETECTOR | | |
| MULTI POLICY DISCOUNT | | |
| CENTRAL STATION FIRE AND BURGLAR ALARMS | | |
| AGE OF HOME SURCHARGE | N/A | $41.00 |
| LOSS ASSESSMENT COVERAGE | $1,000 | INCL |
| PERSONAL INJURY | SEE POLICY | $16.00 |
| WATER BACK-UP | $5,000 | $50.00 |

Coverage is provided only when both a premium and limit are shown.

| | |
|---|---|
| **SUBTOTAL A** | $652.00 |
| **SUBTOTAL B** (from reverse side) | $0.00 |
| **TOTAL ANNUAL PREMIUM** | $652.00 |

\* Replacement up to 125% of dwelling limit of liability.



hd0021

10/26/2011

| COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|
| Additional Charges and Credits | . | |
| | **SUBTOTAL B** | **$0.00** |

### 1st MORTGAGE                                    2nd MORTGAGE

Police and Fire Federal Credit Union

Its Successors and/or Assigns
2837 Southampton Road
Philadelphia, PA 19154

LOAN NUMBER: 757214                                LOAN NUMBER:

### ADDITIONAL INSURED PERSONS

LOAN NUMBER:                                       LOAN NUMBER:

LOAN NUMBER:                                       LOAN NUMBER:

### OTHER PROPERTY INFORMATION

**Location of Property Insured**
856 Meadowood Lane
Warminster, PA 18974

**Legal Property Description**

hdec11

2013/08/16.002126.25.003

IDS Property Casualty Insurance Company
3500 Packerland Drive
De Pere, WI 54115-9070

Policy Number: HI00977297

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY PROTECTION COVERAGE

This coverage is added under Section I - Property Coverage, Additional Coverages.

### Definitions

The following definitions are used in this endorsement only.
All other policy definitions also apply.

**Covered expenses** means:

1. Costs incurred by **you** for re-filing applications for loans, grants and other credit or debt instruments that are rejected solely because the lender received from any source incorrect information as a result of an **identity fraud.**

2. Costs incurred by **you** for obtaining a maximum of four (4) credit reports from an entity approved by **us**. The credit reports must be requested during the policy period and the first credit report may not be requested until after the discovery of an **identity fraud.**

3. Time taken from **your** work and away from the work premises solely as a result of **your** efforts to amend or rectify records as to **your** true identity as a result of an **identity fraud.** Payments for time away from work are limited to $500 per week for a maximum of four (4) weeks ($2,000 total) and include partial or whole days. Payments will only be made for the following:

   a) Actual lost wages;

   b) Remuneration for vacation days, discretionary days, floating holidays, and paid personal days, but not sick days; and

   c) Costs arising for time taken from self-employment.

4. Costs for reasonable attorney's fees and related court fees incurred by **you** with **our** consent; for:

   a) Any suit brought against **you** by a creditor, collection agency or entity acting on behalf of a creditor for nonpayment of goods or services or default on a loan as a result of the **identity fraud;**

and

   b) Removing any criminal or civil judgments wrongfully entered against **you** as a result of an **identity fraud.**

5. Restitution for fraudulent fund withdrawals from **your** financial or credit accounts with an FDIC-insured institution; and

6. The following costs incurred as a result of **your** efforts to report an **identity fraud** to law enforcement agencies, financial institutions, credit grantors, credit agencies and merchants, or to amend or rectify records as to **your** true identity as a result of an **identity fraud:**

   a) Notarizing affidavits or similar documents;

   b) Long distance phone calls;

   c) Postage; and

   d) Copying documents.

**Identity fraud** means knowingly transferring or using, without lawful authority, a means of identification of an **insured person** and committing an act that violates federal law or constitutes a felony under applicable state or local law. Such act or series of acts committed by the same person or persons shall be one **occurrence** of **identity fraud.** The **occurrence** date for a series of acts shall be the date of the initial act.

### Benefits Limit

We will pay up to $5,000 per **identity fraud occurrence.**

### Description of Benefits

We will pay covered expenses incurred by an **insured person**



as the direct result of **identity fraud**. The **identity fraud** must have occurred during **your** policy period. **Covered expenses** are the only benefits payable under this policy. **Covered expenses** are subject to all applicable limits.

## Deductible

This coverage is not subject to a deductible.

## Exclusions

The following are additional exclusions apply to this coverage:

1.  Any fraudulent, dishonest, or criminal act by **you** or anyone acting in concert with **you**, including **your** authorized representative, whether acting alone or in collusion with others;

2.  An electromagnetic field;

3.  Legal actions initiated by **you**;

4.  Entrustment;

5.  **Your** business pursuits; or

6.  **Bodily injury** or **property damage**

### Other Insurance

All benefits under this coverage are excess to and payable after any other insurance or indemnity available to **you**, including contractual payments available to **you** for **your** obligations resulting from **identity fraud**.

All other terms, limitations, conditions and exclusions of this policy apply.

hegn08b

2013/08/16.002126.25.004

**IDS Property Casualty Insurance Company**
3500 Packerland Drive
De Pere, WI 54115-9070

*This endorsement changes the policy and applies only to policies with an original inception date on or after December 15, 2002. Please read it carefully.*

# Amendment of Policy Provisions - Mold Coverage

## Definitions Used Throughout This Policy

The following definition is added:

Fungi means any type or form of fungus, including but not limited to mold, mildew, bacterium, parasitic, microorganisms, wet or dry rot, and any mycotoxins, spores, scents or by-products produced or released by fungi.

Throughout the remaining policy, the word fungus is now changed to **fungi** and is bolded.

## Section I - Property Protection

The following provision is added after the Food Spoilage provision (except in the Tenant Form where it is added after the Loss Assessment provision):

(Special Form only)

### Mold or Fungi

We will pay up to an aggregate of $10,000 for direct physical loss to property covered under Dwelling Coverage, Other Structures Coverage, Personal Property Coverage and Additional Living Expense if the mold or **fungi** is the direct result of a covered loss that occurs during the policy period, caused by a peril **we** insure against. This coverage does not apply if the loss results from the **insured person's** failure to reasonably maintain or protect the property from further damage following a covered loss.

We do not cover the cost of remediation of mold or **fungi**, whether the mold or **fungi** is the result of a covered loss or otherwise. Remediation includes the cost of detecting, testing, decontamination, containment or any expense beyond which is required to repair or replace the covered property physically damaged by a covered loss.

This is the most **we** will pay for the total of all loss or costs payable under this Additional Coverage regardless of the number of locations insured under this endorsement or the number of claims made. Loss payment will not be limited by the terms of this Additional Coverage except to the extent that mold or

fungi causes an increase in the loss. This coverage does not increase the limit of liability applying to the damaged covered property.

(Condominium Form only)

The first paragraph of the Mold or Fungi provision is as follows:

We will pay up to an aggregate of $10,000 for direct physical loss to property covered under Dwelling Coverage, Personal Property Coverage and Additional Living Expense if the mold or **fungi** is the direct result of a covered loss that occurs during the policy period, caused by a peril **we** insure against. This coverage does not apply if the loss results from the **insured person's** failure to reasonably maintain or protect the property from further damage following a covered loss.

(Tenants Form only)

The first paragraph of the Mold or Fungi provision is as follows:

We will pay up to an aggregate of $10,000 for direct physical loss to property covered under Personal Property Coverage and Additional Living Expense if the mold or **fungi** is the direct result of a covered loss that occurs during the policy period, caused by a peril **we** insure against. This coverage does not apply if the loss results from the **insured person's** failure to reasonably maintain or protect the property from further damage following a covered loss.

(Condominium Form only)

### Perils We Insure Against

Number 14. letter d) is replaced by the following:

d) caused by continuous or repeated seepage or leakage of water, steam, humidity, moisture or vapor from or within a plumbing, heating, automatic fire protection sprinkler or air conditioning system including from, within or around any shower stall, shower bath, tub installation or other plumbing fixtures, including their walls, ceiling or floors, or from or within a household appliance, which occurs over a period of weeks, months or years; or



HMPA04a (12/02)

(Special Form only)

## Exclusions

Number 6 under Dwelling and Other Structures is replaced by the following:

6. Continuous or repeated seepage or leakage of water, steam, humidity, moisture or vapor from or within a plumbing, heating, automatic fire protection sprinkler or air conditioning system including from, within or around any shower stall, shower bath, tub installation or other plumbing fixtures, including their walls, ceiling or floors, or from or within a household appliance, which occurs over a period of weeks, months or years; or

# Part II - Personal Liability Protection

The following provision is added after the Loss Assessment provision.

### Mold or Fungi

Our total liability for Personal Liability Coverage is limited to $50,000 for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any mold, **fungi**, wet or dry rot, or bacteria. This is the most we will pay regardless of:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons insured;

3. Number of persons whose property is damaged;

4. Number of **insured persons**; or

5. Number of **occurrences** or claims made. This is the maximum possible loss for any one **occurrence**

This limit is within, but does not increase, the Personal Liability Limit. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the declarations.

Includes copyrighted material of IDS Property Casualty Insurance Company or Ameriprise Insurance Company, 1996; and also includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc. 1994

IDS Property Casualty Insurance Company
3500 Packerland Drive
De Pere, WI 54115-9070

*This endorsement changes the policy. Please read it carefully.*

# Amendment of Policy Provisions - Pennsylvania

## Section I - Property Protection

### Exclusions

The following is added to Exclusion number 9:

However, this exclusion will not apply to deny an **insured person's** claim for an otherwise covered property loss under this policy if such a loss is caused by an act of domestic violence by another **insured person** under this policy and the **insured person** claiming the property loss:

a.  Did not cooperate in or contribute to the creation of the loss; and

b.  Cooperates in any investigation relating to the loss.

We may apply reasonable standards of proof for such claims.

Any payment to an insured person is limited to that **insured person's** insurable interest in the property less any payments **we** first made to a mortgagee or other party with a secured interest in the property. In no event will **we** pay more than the Limit of Liability.

### Conditions

#### How Losses Are Settled

(Special Form only)

Under Dwelling and Other Structures Coverages:

The following language is added to this section:

We will not pay costs to repair or replace portions of a dwelling or other structure not directly damaged by a covered peril in this policy, regardless if the replacement materials that reasonably match the existing materials on the dwelling or other structure are no longer manufactured or are otherwise unavailable.

Number 1. is amended as follows:

1.  increase the Dwelling Coverage limit to equal the replacement cost of the dwelling at the time of the loss. However, any increase will not be greater than 125 percent of the Dwelling Coverage limit that was in effect prior to the loss; and

(Condominium Unit Owners Form only)

The following is added to item B. "Loss to property covered under Dwelling Coverage will be settled as follows:"

We will not pay costs to repair or replace portions of a dwelling not directly damaged by a covered peril in this policy, regardless if the replacement materials that reasonably match the existing materials on the dwelling are no longer manufactured or are otherwise unavailable.

## General Policy Conditions Applying To Section I And Section II

### Our Right to Recover Payment

The following is added:

If **we** pay an **insured person**, who is a victim of domestic violence, for a loss caused by an act of domestic violence, the rights of the **insured person** to recover damages from the perpetrator of the violence are transferred to **us** to the extent of **our** payment. Following the loss, the **insured person** may not waive such rights to recover against the perpetrator of the domestic violence.

## Optional Coverages

### Earthquake Coverage

(Condominium Units Owners Form only)

The **Deductible** section is replaced with the following:

We will pay only that part of the loss, up to the limit of liability shown on the declarations page, in excess of the deductible shown on the declarations page. The deductible amount shall not be less than $500.00 and shall apply separately to loss under Dwelling and Personal Property Coverage.

(Tenants Form only)

The **Deductible** section is replaced with the following:

> **We** will pay only that part of the loss, up to the limit of liability shown on the declarations page, in excess of the deductible shown on the declarations page. The deductible amount shall not be less than $500.00 and shall apply to loss under Personal Property Coverage.

## Loss Assessment

The following is added:

> **We** will pay no more than the limit of liability for a loss assessment shown in **your** declarations which was effective on the date of:
>
> 1.  Discovery of a structural condition that potentially could lead to a loss to the property; or
>
> 2.  The actual loss to the property,
>
> whichever occurs first.



Includes copyrighted material of IDS Property Casualty Insurance Company or Ameriprise Insurance Company, 1996; and also includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc. 1984

HMPA03b

# Your Safety Pays Home Policy

## Pennsylvania

### Special Form



Ameriprise
*Auto & Home Insurance*

**IDS Property Casualty Insurance Company**

**Home Office**

3500 Packerland Drive
De Pere, WI 54115

**Administrative Office**

3500 Packerland Drive
De Pere, WI 54115

IDS Property Casualty Insurance Company is a stock company.

23212 (01/01 PA)

## Your Policy at a Glance

Agreement................................................................................................................................1
Definitions Used Throughout This Policy ........................................................................1
Section I - Property Protection .........................................................................................2
    Dwelling Coverage ....................................................................................................2
    Other Structures Coverage ........................................................................................2
    Personal Property Coverage ......................................................................................2
    Special Limits on Certain Property ...........................................................................3
    Additional Living Expense and Loss of Rents Coverages .......................................3
    Additional Coverages ................................................................................................4
    Deductible ..................................................................................................................5
    Perils We Insure Against ...........................................................................................6
    Exclusions ..................................................................................................................7
    Conditions ..................................................................................................................8

Section II - Personal Liability Protection ......................................................................11
    Personal Liability Coverage ....................................................................................11
    Medical Payments to Others Coverage ...................................................................11
    Additional Coverages ..............................................................................................11
    Exclusions ................................................................................................................12
    Conditions ................................................................................................................13

General Policy Conditions Applying To Section I And Section II ..................................14
    Assignment ..............................................................................................................14
    Cancellation .............................................................................................................15
    Nonrenewal ..............................................................................................................15
    Concealment or Fraud .............................................................................................15
    Changes ....................................................................................................................16
    Our Right to Recover Payment ...............................................................................16
    Policy Period ...........................................................................................................16

Optional Coverages ........................................................................................................16
    Additional Persons Covered ....................................................................................16
    Earthquake Coverage ..............................................................................................16
    Loss Assessment .....................................................................................................17
    Personal Injury ........................................................................................................17
    Scheduled Personal Property ...................................................................................17
    Water Back Up And Sump Overflow ......................................................................19
    Personal Computer Coverage ..................................................................................19

Includes copyrighted material of IDS Property Casualty Insurance Company or Ameriprise Insurance
Company, 1996; and also includes copyrighted material of Insurance Services Office, Inc, with its
permission.  Copyright, Insurance Services Office, Inc., 1984

2013/08/16.00126.25.007

**Please read this policy carefully.**
**It is a contract between you and us.**

## Agreement

**We** agree with **you**, in return for **your** premium payment, to provide insurance subject to all the terms of this policy. The coverages provided, the limits of **our** liability and the premiums are shown in the declarations of this policy.

## Definitions Used Throughout This Policy

The terms defined below appear in bold type throughout this policy:

**You** and **your** means the Policyholder named in the declarations and spouse if living in the same household.

**We**, **us**, and **our** means IDS Property Casualty Insurance Company.

**Bodily injury** means bodily harm, sickness or disease, and includes required care, loss of services and resulting death. This does not include punitive or exemplary damages.

**Business** means:

1.   any full or part-time trade, profession or occupation including farming;

2.   the rental or holding for rental of any premises by an **insured person**; and

3.   the provision of home day care services if an **insured person**:

   a)   regularly provides such services to a person or persons other than **insured persons**; and
   b)   receives compensation for such services. Mutual exchange of such services is not considered to be compensation.

The rendering of such services to a relative of an **insured person** is not to be considered a **business**.

**Insured person** means:

1.   **you**;

2.   **your** relatives residing in **your** household; and

3.   any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative;

Under Section II - Personal Liability Protection, **insured person** also means:

4.   a person or organization legally responsible for animals or watercraft covered by this policy and owned by a person in points 1., 2. or 3. noted above. But **we** will cover that person or organization only with respect to those animals or watercraft. **We** will not cover a person or organization using or having custody of animals or watercraft in the course of any **business** or without permission of the owners;

5.   with respect to a vehicle covered by this policy, an employee of a person in points 1., 2. or 3. noted above, while engaged in the employment of that person; and

6.   with respect to a vehicle covered by this policy, any other person using the vehicle with **your** permission on an **insured premises.**

**Insured premises** means:

1.   the **residence premises;**

2.   any other premises acquired by **you** during the term of this policy which **you** intend to use as a residence;

3.   the part of any other premises where **you** reside and which is shown in the declarations;

4.   part of a premises not owned by an **insured person** where the **insured person** may be temporarily residing or which an **insured person** may occasionally rent for non-**business** purposes;

5.   vacant land, other than farmland, owned by or rented to an **insured person;**

6.   cemetery plots or burial vaults owned by an **insured person;**

7.   land on which a single or two family residence is being built for an **insured person**, if the land is owned by or rented to the **insured person;** and

8.   structures or grounds used by **you** in connection with **your residence premises.**

**Occurrence** means an accident which is unexpected or unintended from **your** standpoint resulting in **bodily injury** or **property damage** during the policy period. It also includes repeated or continuous exposure to substantially the same general harmful conditions.

**Property damage** means physical injury to, destruction of or loss of use of tangible property. This does not include punitive or exemplary damages.

**Residence employee** means an employee of an **insured person** whose duties are in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs similar duties elsewhere



1

not in connection with an **insured person's business**.

**Residence premises** means the one family dwelling where **you** reside including the building, the grounds and other structures on the grounds.

**Residence premises** also means that part of any other building where **you** reside. Such dwellings or buildings must be described in the declarations.

**Actual cash value** is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to deduction for deterioration, depreciation and obsolescence. **Actual cash value** applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The **actual cash value** of the loss or damaged property may be significantly less than its replacement cost.

---

# Section I - Property Protection

---

## Dwelling Coverage

**We** cover:

1.  **your** dwelling, including structures attached to it, at the **residence premises** The dwelling must be used principally as a private residence; and

2.  construction material at or next to the **residence premises** for use in connection with **your** dwelling.

**We** do not cover any land.

## Other Structures Coverage

**We** cover:

1.  other structures at the **residence premises** not attached to the dwelling, or connected to the dwelling by only a utility line, fence or similar connection; and

2.  construction material at or next to the **residence premises** for use in connection with other structures.

**We** do not cover loss to structures:

1.  used in whole or in part for **business**; or

2.  rented or held for rental in whole or in part to a person other than a tenant of the dwelling.

**We** do not cover any land.

The limit of liability for this coverage will not be more than

the limit shown on the declarations page and is the total limit of liability resulting from any one **occurrence**

## Personal Property Coverage

**We** cover personal property owned or used by an **insured person** anywhere in the world. Any personal property, which is usually at an **insured person's** residence other than the **residence premises**, is covered for up to 10% of the Personal Property Coverage limit but not less than $1,000. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after **you** begin to move the property there.

If **you** ask **us** to, **we** will cover personal property owned by others while it is on the part of the **residence premises** occupied exclusively by an **insured person**. Also, if **you** ask **us**, **we** will cover personal property of a house guest or **residence employee** in any residence occupied by an **insured person**. **Your** request that **we** cover such property may be submitted before or after a loss, except requests to cover property of live-in friends, which must be submitted before a loss occurs.

**We** do not cover:

1.  animals, birds or fish;

2.  land motorized vehicles and their equipment and accessories while in or upon the vehicles. **We** do cover those vehicles not licensed for road use if:

    a)  used solely to service the **residence premises**; or
    b)  designed to assist the handicapped;

3.  any type of aircraft and their parts and equipment, whether assembled or not. But **we** do cover model airplanes not used or designed for transporting cargo or persons.

4.  property of roomers and boarders not related to an **insured person**, or property of tenants;

5.  **business** data, including **business** data stored in:

    a)  electronic data processing software media, such as tapes, wire and discs; or
    b)  paper records, such as books of account and drawings.

    But, **we** do cover the cost of:

    a)  unexposed or blank media or records; and
    b)  prerecorded computer programs which are available on the retail market;

6.  property rented or held for rental to others by an **insured person** while away from the **residence premises**;

2



7.  property in an apartment regularly rented or held for rental to others (except roomers or boarders) by an **insured person**;

8.  radios, tape players, compact disc players and other devises for the recording, reproduction, detection, receiving or transmitting of signals, sound or pictures which may be operated by power from the electrical system of a land motorized vehicle while in or upon that vehicle. Accessories to these devices, including antennas, tapes, wires, discs and records or other media for use with such devices are not covered while in or upon a land motorized vehicle; or

9.  property specifically described and insured by this or any other insurance.

## Special Limits on Certain Property

Special limits apply to the following groups of personal property. These limits do not increase the amount of insurance under Personal Property Coverage. The limit of insurance for each group is the maximum **we** will pay for any one **occurrence** for all property included in the group:

**Limit of Insurance        Personal Property Group**

S200    Money, bank notes, bullion, coins and medals and other numismatic property and precious metal including platinum, gold and silver, but not goldware or silverware.

$1,000   Securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, passports, manuscripts, tickets, stamps and other philatelic property.

The limit of insurance:

1.  applies to this group regardless of the medium (such as paper or computer software) on which the material exists; and
2.  includes all costs to research, restore or replace the information from the lot or damaged material.

$1,000   Cemetery markers, headstones and urns.

$1,000   Watercraft, including their trailers, furnishing, equipment and outboard motors.

$1,000   Campers and trailers not used with watercraft.

$3,000   All risk of physical loss to jewelry, precious and semi-precious stones, gems, watches and furs, including any article containing fur which represents its principal value. The maximum limit **we** will pay under this coverage will be $1,000 on any one item, $3,000 in the aggregate. This coverage is subject to

the deductible shown on the declarations page and to the following exclusions:

1.  wear and tear, gradual deterioration, insects, vermin or inherent vice;
2.  nuclear reaction, radiation or radioactive contamination;
3.  war, revolution or insurrection; or
4.  failure to take all reasonable steps to protect the property from any further damage after a loss

$2,500   Theft of firearms and accessories.

$2,500   Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including gold, silver or pewter.

$2,500   Property, on the **residence premises**, used for **business** purposes in any way or at any time, other than **your** personal computer and equipment.

$250    Property, away from the **residence premises**, used for **business** purposes in any way or at any time.

$3,000   Personal computers and equipment while on the **residence premises**

$3,000   Fine arts including paintings, drawings, prints, photographs, sculpture, ceramics, textiles and tapestries, antique furniture, glasswork and curios, and other bona fide works of art, of rarity or historical value that cannot be replaced.

## Additional Living Expense and Loss of Rents Coverages

If a loss covered under this Section makes that part of the **residence premises** where **you** reside not fit to live in, **we** cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by **you** so that **your** household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if **you** permanently relocate, the shortest time required for **your** household to settle elsewhere.

**We** will also pay for **your** loss of normal rents resulting from a covered loss while the rented part of a **residence premises** is uninhabitable, less charges and expenses which do not continue during that time. **We** will pay this loss of normal rents only for the shortest time needed to make the rented part habitable.

If damage caused by a peril **we** insure against occurs at a neighboring premises, **we** will pay reasonable additional living expenses and loss of normal rents for up to two weeks should civil authorities prohibit occupancy of the **residence**



3

premises. These periods of time will not be shortened by the expiration of this policy.

We will not pay for loss or expense due to the cancellation of a lease or agreement. No deductible will apply to these coverages.

## Additional Coverages

### Debris Removal

1.  We will pay reasonable expenses **you** incur to remove debris of covered property following a loss from a peril **we** insure against.

    We will also pay reasonable expenses **you** incur to remove ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property within a building.

    If the damage to that property and the cost of debris removal is more than **our** limit of liability for that property, **we** will pay up to an additional 10% of that limit for debris removal.

2.a) We will also pay **your** reasonable expense, up to $500 for the removal from the **residence premises** of:

    (i)   **your** tree(s) felled by the peril of Windstorm or Hail;
    (ii)  **your** tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or
    (iii) a neighbor's tree(s) felled by a peril **we** insure against under Personal Property Coverage;

    provided the tree(s) damages a covered structure. The $500 limit is the most **we** will pay in any one loss regardless of the number of fallen trees.

2.b) Tree removal coverage as described in 2.a) also applies if windstorm or hail or weight of ice, snow or sleet causes damage to a structure covered under this policy and the Pennsylvania Governor declares the area in which the **residence premises** is located to be a disaster area as a result of such weather conditions.

### Fire Department Charges

We will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to save or protect **your** covered property from a peril **we** insure against. **We** will not pay if the covered property is within the limits of the city, municipality, or protection district which provides the fire department response. Payments are in addition to the amount of insurance applying to the loss.

No deductible applies to this coverage.

**Credit Card, Charge Plate, Fund Transfer Card, Check**

## Forgery and Counterfeit Money Coverages

Credit Card, Charge Plate and Fund Transfer Card Coverage:
If an **insured person** is legally required to pay for the unauthorized use of a credit card or charge plate issued to the **insured person, we** will cover the loss. **We** will also pay for loss which results from unauthorized use of a fund transfer card issued to an **insured person**. A fund transfer card is one used for deposit, withdrawal or transfer of funds. But **we** will not cover use of the credit card, charge plate or fund transfer card by a resident of **your** household. **We** also will not cover use by someone to whom an **insured person** has given the card or plate. **We** will not cover any use unless the **insured person** has met all the terms under which the card or plate was issued.

Check Forgery Coverage:
We cover loss to an **insured person** caused by forgery or alteration of a check. This includes all negotiable instruments.

Counterfeit Money Coverage:
We cover loss sustained by an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

We will not pay more than $1,000 for any one loss involving one or more of these coverages. Repeated losses caused by one person or in which one person is involved are to be considered one loss.

We do not cover any loss that arises from **business** pursuits or dishonesty of the **insured person**.

No deductible applies to these coverages.

If a claim is made or suit is brought against the **insured person** for liability under the Credit Card, Charge Plate or Fund Transfer Card Coverage, **we** will defend the **insured person. We** will use **our** lawyers and bear the expense.

We may at **our** option and at **our** expense, defend the **insured person** or that person's bank against a suit to enforce payment under the Check Forgery Coverage.

We may investigate any claim or settle any suit as **we** think appropriate.

We will not defend after **we** have paid an amount equal to the limit of **our** liability.

### Emergency Removal of Property

We will pay for property damaged in any way being removed or while removed from a premises because of danger from a peril **we** insured against. Coverage is limited to a 30-day period from date of removal. Payments will not increase the amount of insurance applying to the covered property.



**Necessary Repairs After Loss**

We will pay the reasonable cost you incur for necessary repairs made solely to protect covered property from additional damage following a loss from a peril we insure against. Payments will not increase the amount of insurance applying to the covered property.

**Trees, Shrubs, Plants and Lawns**

We will pay up to 5% of the limit of insurance under Dwelling Coverage for loss to trees, shrubs, plants and lawns at the **residence premises** Coverage applies to loss caused by the following perils we insured against: fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned or operated by an occupant of the **residence premises**, vandalism or malicious mischief or theft. Payments are in addition to the amount of insurance applying to Dwelling Coverage.

We will not pay for:

1.   more than $500 on any one tree, shrub or plant; or

2.   trees, shrubs, plants or lawns grown for **business** purposes.

**Collapse**

We cover risk of direct physical loss involving collapse to property insured under Personal Property Coverages only if:

1.   the loss involves collapse of a building or part of a building; and

2.   the collapse is caused by any of the following:

   a)   decay that is hidden from view, unless the presence of such decay is known to an **insured person** prior to collapse;

   b)   insect or vermin damage that is hidden from view, unless the presence of such damage is known to tan **insured person** prior to collapse;

   c)   weight of people, contents, animals, equipment and/or furniture;

   d)   defective material or defective methods used in construction, reconstruction, renovation or remodeling;

   e)   weight of rain which collects on a roof; or

   f)   perils we insure against in this policy.

With respect to Collapse:

1.   collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

2.   a building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

3.   a part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; or

4.   a building that is standing or any part of a building that is standing is not considered to be in a state of collapse event if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Under points 2., a), b), c), d) and e) noted above, coverage does not apply to loss to the following unless damage is caused directly by collapse of a building:

awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves or docks.

This coverage does not increase the amount of insurance applying to the covered property.

**Loss Assessment**

We will pay up to $1,000 for **your** share of any loss assessment charged against **you** as owner or tenant of the **residence premises** by an association or corporation of property owners if the assessment is made as a result of direct loss caused by a peril we insure against to property owned by all members collectively.

We will not pay if the loss is caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption. We will not pay for any loss assessments charged by a governmental body.

**Lock Replacement**

We will pay up to $100 per **occurrence** for necessary replacement of locks when the keys to the **residence premises** are stolen in a covered theft loss. No deductible applies to this coverage.

**Food Spoilage**

We will pay up to $500 per **occurrence** for spoilage of food in a freezer or refrigerator on the **residence premises** resulting from power failure. Power failure means the failure of power or other utility service if the failure takes place off the **residence premises** No deductible applies to this coverage.

## Deductible

We will pay for loss to covered property minus the deductible, if any, shown in the declarations.



## Perils We Insure Against

We cover risk of direct physical loss to property insured under the Dwelling and Other Structures Coverages except for losses excluded elsewhere under this policy.

We cover risk of direct physical loss to property insured under Personal Property Coverage caused by any of the following perils unless the loss is excluded elsewhere under this policy.

1.  We insure against fire or lightning.

2.  We insure against windstorm or hail.

    This does not include loss:

    a)  to property in a building caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters; or
    b)  to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building.

3.  We insure against explosion.

4.  We insure against riot or civil commotion, including direct loss from pillage and looting during and at the site of the riot or civil commotion.

5.  We insure against aircraft, including self-propelled missiles and spacecraft.

6.  We insure against vehicles.

7.  We insure against smoke, if the loss is sudden and accidental.

    This peril does not apply to loss caused by smoke from agricultural smudging or industrial operations.

8.  We insure against vandalism or malicious mischief.

9.  We insure against theft or attempted theft, including loss of property from a known place if it is likely that a theft has occurred.

    This peril does not apply to theft:

    a)  committed by an **insured person**;
    b)  in or from a dwelling under construction or of construction material and supplies until completed and occupied; or
    c)  from the part of the **residence premises** rented to a person other than an **insured person** by an **insured person**.

    This peril does not apply away from the **residence**

premises to theft of:

a)  property while in any other dwelling or its premises owned, rented or occupied by an **insured person** except while an **insured person** is temporarily residing there. Property of an **insured person** who is a student is covered at a residence away from home if the student has been there at any time during the 45 days immediately before the loss; or
b)  watercraft and its equipment, outboard motors, campers and trailers.

10. We insure against falling objects.

    This peril does not apply to loss to property within a building unless the falling object first damages the exterior of the building. We do not cover damage to the falling object.

11. We insure against weight of ice, snow or sleet which damages property in the building.

12. We insure against sudden and accidental tearing apart, cracking, burning or bulging of a heating, air conditioning or automatic fire protection sprinkle system or a water heating appliance.

    This peril does not apply to loss which is caused by or results from freezing.

13. We insure against accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or household appliance.

    This peril does not apply to loss:

    a)  to the appliance from which the water or steam escapes;
    b)  caused by or resulting from freezing except as provided in the Peril of Freezing; or
    c)  on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises**

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

14. We insure against freezing of plumbing, heating and air conditioning, or automatic protection sprinkler systems and household appliances.

15. We insure against sudden and accidental loss caused by artificially generated electrical currents.

    This peril does not apply to tubes, transistors or other electronic components.



16. Damage by glass or safety glazing material which is part of a building, storm door or storm window.

    This peril does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

17. **We** insure against volcanic eruption. **We** do not cover loss caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption. All eruptions that occur within a period of 72 hours will be considered one volcanic eruption.

## Exclusions

**We** do not cover loss caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:

1. ordinance or law, meaning any ordinance or law:

    a) requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion does not apply to the amount of coverage that may be provided for under Additional Coverages, Ordinance or Law;

    b) the requirements of which result in a loss in value to property; or

    c) requiring any **insured person** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

        Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

        This exclusion applies whether or not the property has been physically damaged;

2. earth movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption, landslide, mine subsidence, mudflow, earth sinking, rising or shifting, unless direct loss by:

    a) fire; or

    b) explosion;

    ensues and then **we** will pay only for the ensuing loss.

    This exclusion does not apply to loss by theft;

3. water damage, meaning:

    a) flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by wind;

    b) water which backs up through sewers or drains or which overflows from a sump; or

    c) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.

    **We** do cover direct loss that follows, caused by theft, fire or explosion;

4. power failure, meaning the failure of power or other utility service if the failure takes place off the **residence premises.** But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the **residence premises, we** will pay for the loss or damage caused by that Peril Insured Against;

5. freezing of plumbing, heating or air conditioning or automatic protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant or unoccupied unless **you** take precautions to:

    a) shut off the water supply and drain the systems and appliances of water; or

    b) maintain heat in the building;

6. neglect of an **insured person** to use all reasonable means to save or protect covered property at and after the time of loss, or if endangered by a loss **we** cover;

7. war (declared or undeclared) civil war, insurrection, rebellion or revolution.

8. nuclear action, meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these.

    Loss caused by nuclear action is not considered loss by perils of fire, explosion or smoke.

    Direct loss by fire resulting from nuclear action is covered; or

9. intentional loss, meaning any loss arising out of any act an **insured person** commits or conspires to commit with the intent to cause a loss.

    In the event of such loss, no **insured person** is entitled to coverage, even **insured persons** who did not commit or conspire to commit the act causing the loss.

7



2013/08/16.002126.25.010

Under Dwelling and Other Structures Coverages, **we** do not cover loss resulting directly or indirectly from:

1.  weather conditions which contribute in any way with any of the events excluded in exclusions 1 through 9 above to cause the loss;

2.  acts or decisions of any person, group, organization or governmental body, or their failure to act or decide;

3.  faulty, inadequate or defective:

    a)  construction, reconstruction, repair, remodeling or renovation;
    b)  materials used on construction, reconstruction, repair, remodeling or renovation;
    c)  design, workmanship, specifications;
    d)  siting, surveying, zoning, planning, development, grading or compaction; or
    e)  maintenance of a part or all of the **residence premises** or any other property;

4.  wear and tear; marring or scratching; deterioration; damage which occurs over a period of time, or from lack of normal maintenance; defective materials and workmanship; inherent vice; latent defect; mechanical breakdown; rust; mold; fungus; wet or dry rot; discharge, dispersal or release of pollutants or contaminants; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinkage, bulging or expansion of pavement, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. However, we'll pay for an ensuing accidental loss not excluded.

    If any of these cause water damage not otherwise excluded, from a plumbing heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which this water escaped;

5.  theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied;

6.  continuous or repeated seepage or leakage of water or steam from within a plumbing, heating, automatic fire protection sprinkler or air conditioning system or from within a household appliance which occurs over a period of weeks, months or years;

7.  freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

8.  vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant; or

9.  collapse of a building or any part of a building except as provided under Additional Coverage - Collapse.

Ensuing loss under items 1 through 9 is covered, if not otherwise excluded in this policy.

## Conditions

### What To Do In Case Of Loss

If a covered loss occurs, the **insured person** must:

1.  give **us** notice as soon as reasonably possible. In case of theft, also notify the police. In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverages, also notify the issuer of card or plate or the bank;

2.  protect the property from further damage, making necessary and reasonable repairs to protect the property, and keeping records of the costs of repairs;

3.  make a list of all damaged or destroyed property, showing in detail quantities, description, replacement cost and amount of loss claimed;

4.  send to **us**, within 60 days after the notice of loss, the above list and a proof of loss signed and sworn to by the **insured person**, including:

    a)  the date, time and cause of loss;
    b)  the interest of **insured persons** and all others in the property;
    c)  all encumbrances on the property;
    d)  other policies covering the loss;
    e)  changes in title, use, occupancy or possession of the property during the policy period; and
    f)  if required, any plans and specifications of the damaged buildings or fixtures;

5.  exhibit the damaged property to **us** or **our** representative, as often as may be reasonably required;

6.  submit to examinations under oath by any person named by **us** and sign the transcript of the examinations;

7.  produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as **we** may reasonably require;

8.  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and



8

2013/08/16.002126.25.011

records pertaining to any loss of rental income; and

9.  in case of loss under Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages, produce evidence or affidavit that supports the claim, stating the amount and cause of loss.

**How Losses Are Settled**

Under Personal Property Coverage:

Loss to personal property will be settled at the replacement cost value of the damaged property at the time of loss. There will be no deduction for depreciation.

The replacement cost of a single item of personal property is limited to the amount it would cost to replace it with a similar item of like kind and quality.

The types of personal property listed below will not qualify for replacement cost settlement. Loss will be settled at the **actual cash value** of the damaged property at the time of loss but not more than the amount required to repair or replace. **Actual cash value** includes deduction for depreciation of:

1.  paintings, drawings, prints, photographs, sculpture, ceramics, textiles and tapestries, antique furniture, glasswork and curios, and other bona fide works of art of rarity or historical value that cannot be replaced;

2.  articles which age or history contributes substantially to their value including, but not limited to, memorabilia, souvenirs and collectors' items; or

3.  property which because of age or condition has become obsolete or unusable for its original intended purpose.

We will pay no more than the smallest of the following:

1.  four times the **actual cash value** of the item at the time of loss;

2.  the replacement cost of the item at the time of loss;

3.  the amount actually and necessarily spent by the insured for repairing or restoration;

4.  the limit of liability applying to Personal Property Coverage; or

5.  any special limits in the policy.

If the replacement cost for the entire loss is greater than $500, we will not be liable for full replacement cost until actual repair or replacement is completed.

We also reserve the right to replace any item(s) damaged or lost without obligation to replace all items.

You may make a claim for loss on an **actual cash value** basis. Then, within 180 days after the loss, **you** may claim any additional costs in accordance with the replacement cost provision.

Under Dwelling and Other Structures Coverages:

If the amount of loss to **your** dwelling, except for flat roof surfacing, is greater than the limit of liability shown on the declarations page for Dwelling Coverage, **we** will:

1.  increase the Dwelling Coverage limit to equal the replacement cost of the dwelling at the time of loss; and

2.  increase the limits of liability that apply to Other Structures, Personal Property, Additional Living Expense and Loss of Rents coverages by the same percentage that the Dwelling Coverage limit of liability is increased.

The policy premium will be adjusted on the basis of the increases in the limits of liability for the time of loss to the termination of the policy period.

**We** will pay the full cost to repair or replace the damaged part of the dwelling or other structure, except for flat roof surfacing, with equivalent construction, without deduction for depreciation. **We** will pay no more than the smallest of the following:

1.  the cost to replace the damaged dwelling or other structure with equivalent construction for equivalent use; or

2.  the amount actually spent for necessary repair or replacement of the damaged dwelling or other structure; or

3.  125 percent of the Dwelling Coverage limit of liability.

Flat roof surfacing will not qualify for replacement cost settlement. Loss will be settled by **actual cash value** of the damaged roof at the time of loss but not more than the amount required to repair or replace. **Actual cash value** includes deduction for depreciation.

**We** will pay only the **actual cash value** of the damaged property until actual repair or replacement is completed on the dwelling and other structures, excluding flat roof surfacing.

**You** may make a claim for loss on an **actual cash value** basis. Then, within 180 days after the loss, except for losses to flat roof surfacing, **you** may claim any additional costs in accordance with the replacement cost provision.

**Your Obligations:**

1.  **You** must agree to an adjustment of the limit of liability for Dwelling Coverage equal to



a) 100% of the replacement cost of **your** dwelling; and

b) increases caused by inflation. **You** must pay the adjusted premium.

2. **You** must notify **us** within 90 days of the start of any alterations or additions which will increase the value of **your** dwelling or other structures by $5,000 or more. If **you** fail to notify **us** within 90 days, **our** payment will not exceed the limit of liability shown on the declarations page.

**We** may make a cash settlement and take all or part of the damaged property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give **you** notice of **our** intention within 15 working days after **we** receive **your** proof of loss.

**Appraisal**

If **you** and **we** fail to agree on the **actual cash value** or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the **actual cash value** and loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the **actual cash value** or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the **actual cash value** or amount of loss.

Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal.

**Insurable Interest**

**We** will not pay more than the insurable interest an **insured person** has in the covered property at the time of loss.

**Abandoned Property**

**We** are not obliged to accept abandoned property.

**Recovered Property**

If property for which **we** have made payment is recovered by **you** or **us**, **you** or **we** will notify the other of the recovery. **You** will have the option of keeping the property or having it become **our** property. If **you** keep the property, **you** will

repay the amount **you** received for that property.

**Loss to a Pair or Set**

**We** may repair or replace any part of the pair or set to restore it to its value before the loss, or **we** may pay the difference between the **actual cash value** of the property before and after the loss.

**Glass replacement**

Loss for damage to glass caused by a peril insured against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**Our Payment of Loss**

**We** will adjust any loss with **you** and pay **you** unless another payee is named in the policy or is legally entitled to be paid. **We** will pay within 60 days after **we** receive **your** proof of loss and the amount of loss is finally determined by:

1. agreement between **you** and **us**;

2. a court judgment; or

3. an appraisal award.

**Mortgagee**

Loss shall be payable to any mortgagee named in the declarations, to the extent of their interests and in the order of precedence. Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

**Our Duties**

**We** will:

1. protect the mortgagee's interests in the insured building. This protection will not be invalidated by any act or neglect of any **insured person**, breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

2. give the mortgagee 10 days notice before canceling this policy.

**Mortgagee's Duties**

The mortgagee will:

1. furnish proof of loss within 60 days if the **insured person** fails to do so;

2. pay upon demand any premium due if the **insured person** fails to do so;



10

2013/08/16.002126.25.012

3. notify **us** of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

4. give **us** the right of recovery against any party liable for loss; but giving **us** this right will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim; and

5. after a loss, permit **us** to satisfy the mortgagee requirement and receive full transfer of the mortgage.

Provisions relating to Appraisal, Suit Against Us and Payment of Loss apply to the mortgagee.

### Suit Against Us

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

### No Benefit to Bailee

This insurance will not, in any way, directly or indirectly, benefit any person or organization who may be caring for or handling property for a fee.

### Other Insurance

If both this and other insurance apply to a loss, **we** will pay **our** share. **Our** share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

---

# Section II - Personal Liability Protection

---

## Personal Liability Coverage

We will pay all sums arising out of any one **occurrence** which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this policy. If a claim is made or suit is brought against the **insured person** for liability under this coverage, we will defend the **insured person** at **our** expense, using lawyers of **our** choice. We are not obligated to defend after we have paid an amount equal to the limit of **our** liability. We may investigate or settle any claim or suit as **we** think appropriate.

## Medical Payments to Others Coverage

We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services, prosthetic devices, eye glasses, hearing aids and pharmaceuticals, and ambulance, hospital and licensed nursing services. These expenses must be incurred or medically ascertained within three years from the date of an accident causing **bodily**

**injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on an **insured premises** with the permission of an **insured person,** or

2. elsewhere, if the **bodily injury**:

   a) arises out of a condition on the **insured premises** or the ways immediately adjoining;
   b) is caused by the activities of an **insured person** or **residence employee** in the course of employment by an **insured person**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee** arising out of and in the course of employment by an **insured person.**

We do not cover injury to:

1. **insured persons**; or

2. any other person, except a **residence employee,** who resides regularly on any part of an **insured premises.**

We may pay the injured person, the party that renders the medical services or the person responsible for payment of the medical expenses.

Payment under this coverage is not an admission of liability by **us** or an **insured person**.

## Additional Coverages

We will pay, in addition to **our** limit of liability:

### Damage to Property of Others

Up to $500 per **occurrence** for **property damage** to property owned by others caused by an **insured person**. Payment will be on a replacement cost basis. But, we will not pay for **property damage**:

1. caused intentionally by an **insured person** who has attained the age of 13;

2. to property owned by an **insured person** or owned by or rented to a tenant of an **insured person** or a resident of **your** household;

3. arising out of:

   a) an act or omission in connection with a premises (other than **insured premises**) owned, rented or controlled by an **insured person**;
   b) **business** pursuits; or



c) ownership, maintenance or use of a land motor vehicle, trailer, aircraft or watercraft. **We** will pay for **property damage** arising out of ownership, maintenance or use of a land motor vehicle designed for recreational use off public roads, if not subject to motor vehicle registrations and not owned by an **insured person.**

4. *to the extent of insurance available under Section I of this policy.*

**We** will pay in addition to **our** limit of liability the following expenses:

1. all costs **we** incur in the settlement of a claim or defense of a suit;

2. interest on the entire amount of damages awarded in a suit **we** defend accruing after judgment is entered and before **we** have paid, offered to pay, or deposited in court that portion of the judgment which is not more than **our** limit of liability;

3. premiums on bonds required in a suit **we** defend. But, **we** will not pay the premium for the portion of a bond amount that is greater than **our** limit of liability;

4. the cost of appeal bonds if **we** decide to appeal. **We** will also pay interest on the full amount of the judgment, even if the judgment is higher than the limit of liability;

5. loss of earnings up to $100 a day, but not other income, when **we** ask **you** to help **us** investigate or defend any claim or suit;

6. other reasonable expenses incurred at **our** request; and

7. prejudgment interest awarded against the **insured person** on that part of the judgment **we** pay. Any prejudgment interest awarded against the **insured person** is subject to the applicable Pennsylvania Rules of Civil Procedure.

### First Aid Expense

Expenses for immediate medical and surgical treatment for persons other than **insured person** at the time of the accident. **We** will pay only expenses which and **insured person** incurs for treatment of **bodily injury** covered by this policy.

### Loss Assessment

**We** will pay up to $1,000 for **your** share of any loss assessment charged against **you** as an owner or tenant of the **residence premises** by an assoication or corporation of property owners if the assessment is made as a result of:

1. an **occurence** covered under Section II of this policy;

or

2. the liability for an act of a director, trustee, or officer in the capacity of director, trustee, or officer. The director, trustee, or officer must be elected by the members of the association or corporation and must serve without pay for performing duties as director, trustee, or officer.

**We** will not pay for any loss assessments charged by a governmental body.

### Exclusions

Under Personal Liability Coverage and Medical Payments to Others Coverage, **we** do not cover:

1. **bodily injury** or **property damage** arising out of the *ownership, maintenance, use, operation, loading or unloading of or entrustment to anyone by an* **insured person** *of or parental liability imposed by law for the actions of a minor using:*

   a) any type of aricraft and their parts and equipment, whether assembled or not. We do cover model airplanes not used or designed for transporting cargo or persons;

   b) a land motor vehicle designed for use on public roads, or any trailer while it is used with such vehicle, other than a recreational land motor vehicle, owned or operated by or rented or loaned to an **insured person.**

   **We** do provide coverage if the land motor vehicle is not subject to motor vehicle registration because it is:

   (i) used solely to service an **insured person's** residence;
   (ii) designed for assisting the handicapped; or
   (iii) kept in dead storage on the **insured premises;**

   c) a recreational land motor vehicle, other than a golf cart while used for golfing, owned by an **insured person,** if the **bodily injury** or **property damage** occurs away from the **insured premises;** or

   d) watercraft not located on the **insured premises:**

   (i) owned by an **insured person** if it has inboard or inboard-outdrive motor power;
   (ii) rented to an **insured person** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;
   (iii) owned by or rented to an **insured person** if it is a sailing vessel 26 feet or more in length; or
   (iv) powered by one or more outboard motors with



12

2013/08/16.002126.25.013

more than 50 total horsepower owned by an **insured person**. But this subdivision (iv) does not apply to such outboard motors if:

- **you** acquire them before the inception date of the policy and declare them at policy inception;
- **you** acquire them before the inception date of the policy and notify **us** in writing within 45 days after **you** acquire them that **you** wish to insure them; or
- **you** acquire them during the policy period.

This exclusion does not apply to watercraft while stored.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of employment by an **insured person**.

2. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

3. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured person**. But, **we** will cover activities of that person not ordinarily incident to **business** pursuits;

4. **bodily injury** or **property damage** arising out of any premises owned, rented or controlled by an **insured person** which is not an **insured premises**. But, **we** will cover **bodily injury** to a **residence employee** arising out of and in the course of employment by an **insured person** at such premises;

5. **bodily injury** or **property damage** expected or intended by one or more **insured persons**, even if the **bodily injury** or **property damage**:

   a) is of a different kind, quality or degree than initially expected or intended; or
   b) is sustained by a different person, entity, real or personal property than initially expected or intended.

6. **bodily injury** or **property damage** arising out of war (declared or undeclared), civil war, insurrection, rebellion, revolution or discharge of a nuclear weapon even if accidental; or

7. **bodily injury** which arises out of the transmission of a communicable disease by an **insured person**, caused wholly or in part by any action by **you**.

Under the Personal Liability Coverage, **we** do not cover:

1. liability assumed under:

   a) an oral contract or agreement; or
   b) a contract or agreement:

      (i) in connection with any **business** of an **insured person**; or
      (ii) where the liability of others is assumed by the **insured person** after an event or **occurrence** causing the loss;

2. liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners. This exclusion does not apply to Loss Assessment under Additional Coverages;

3. **property damage** to property owned by an **insured person**;

4. **property damage** to property occupied or used by an **insured person** or rented to or in the care of an **insured person**. But **we** will cover **property damage** to such property caused by fire, smoke or explosion;

5. **bodily injury** to a person if an **insured person** has or is required to have a policy providing workers' compensation, non-occupational disability or occupational disease benefits covering the **bodily injury**;

6. **bodily injury** or **property damage** when an **insured person** is covered under a nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted; or

7. **bodily injury** to:

   a) **you**;
   b) **your** relatives residing in **your** household; and
   c) any other persons under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative.

Under Medical Payments to Others Coverage, **we** do not cover:

1. **bodily injury** to a person who is entitled to benefits which are provided or required to be provided under any workers' compensation, non-occupational disability or occupational disease law; or

2. **bodily injury** from any nuclear reaction, radiation or radioactive contamination or any consequence of any of these.

## Conditions

**What to do in Case of Bodily Injury or Property Damage**



13

In the event of **bodily injury** or **property damage**, the **insured person** must:

1. notify **us** or **our** agent as soon as reasonably possible. The notice must give:

   a) **your** name and policy number;
   b) the time, place and circumstances of the accident, **occurrence** or loss; and
   c) the names and addresses of injured persons, claimants and witnesses;

2. send **us** promptly any legal papers received relating to a claim or suit;

3. cooperate with **us** and assist **us** in any matter relating to a claim or suit; and

4. if a loss covered under Damage to Property of Others occurs, send **us**, within 60 days of the loss, sworn proof of loss. The **insured person** shall also exhibit the damaged property if within the **insured person's** control.

The **insured person** will not, except at the **insured person's** own cost, voluntarily make any payment, assume any obligation or incur expenses other than for First Aid Expenses at the time of accident.

### Duties of an Injured Person – Medical Payments to Others Coverage

The injured person or someone acting on behalf of the injured person will give **us**, as soon as reasonably possible, written proof of claim under oath if required.

The injured person will:

1. submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and

2. authorize **us** to obtain medical and other records.

### Limits of Liability

Regardless of the number of **insured persons**, injured persons, claims made or suits brought, **our** liability is limited as follows:

1. as respects Personal Liability Coverage, the limit of liability stated in the declarations is the total limit of **our** liability for all damages resulting from any one **occurrence**; and

2. as respects Medical Payments to Others Coverage, the limit of liability stated in the declarations is **our** limit of liability for all medical expenses for **bodily injury** to any one person as the result of any one accident.

### Severability of Insurance

This insurance applies separately to each **insured person** against whom claim is made or suit is brought, subject to **our** limits of liability for each **occurrence**.

### Suit Against Us

We may not be sued unless there is full compliance with all the terms of this policy.

We may not be sued under the Personal Liability Coverage until the obligation of an **insured person** to pay is finally determined either by judgment or by written agreement of the person, the claimant and **us**.

No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

### Bankruptcy

We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any **insured person**.

### Other Insurance – Personal Liability Coverage

This insurance is excess over any other valid and collectible insurance. However, if the other insurance is specifically written as excess insurance over this policy, the limits of this policy apply first.

------------------------------------------------------------------------

# General Policy Conditions Applying To Section I And Section II

------------------------------------------------------------------------

## Assignment

Interest in this policy may not be transferred without **our** written consent. However, if any person named in the declarations or the spouse, if a resident of the same household, dies:

1. **we** insure the legal representative of the deceased but only with respect to the premises and property of the decease covered under the policy at the time of death;

2. insurance under this policy will continue as provided in a) or b) below, whichever is later:

   a) for 180 days after **your** death regardless of the policy period shown in the declarations, unless **your** premises and property, covered under the policy at the time of **your** death, is sold prior to that date; or
   b) until the end of the policy period shown in the declarations, unless **your** premises and property, covered under the policy at the time of **your** death,

14



is sold prior to that date.

Coverage during the period of time after **your** death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the declarations and any extensions that period.

3.  **insured person** includes:

    a)  any member of **your** household who is an **insured** person at the time of **your** death, but only while a resident of the **residence premises**, and

    b)  with respect to **your** property, the person having proper temporary custody of the property until appointment and qualifications of a legal representative

## Cancellation

### Your Right to Cancel

**You** may cancel this policy by returning it to **us** or by notifying **us** in writing of the date to cancel, which must be later than the date **you** will mail or deliver it to **us**. **We** may waive these requirements by confirming the date and time of the cancellation to **you** in writing.

### Our Right to Cancel

**We** may cancel this policy only for the reasons stated below by notifying the **insured person** in writing of the date cancellation takes effect. This cancellation notice may be delivered to or mailed to the **insured person** named in the declarations at the mailing address shown in the policy or at the forwarding address.

Proof of mailing will be sufficient proof of notice.

1.  When this policy has been in effect for less than 60 days and is not a renewal with **us, we** may cancel for any reason by notifying the **insured person** named in the declarations at least 30 days before the cancellation takes effect.

2.  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us, we** may cancel only for one or more of the following reasons by notifying the **insured person** named in the declarations at least 30 days prior to the proposed canellation date:

    a)  this policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by **us;**

    b)  there has been a substantial change or increase in hazard in the risk assumed by **us**

subsequent to the date the policy was issued;

c)  there is a substantial increase in hazard insured against by reason of willful or negligent acts or omissions by the **insured person;**

d)  the **insured person** had failed to pay the premium by due date, whether payable to **us** or to **our** agent or under any finance or credit plan; or

e)  for any other reason approved by the Pennsylvania Insurance Commisioner.

This provision shall not apply if the named **insured person** has demonstrated by some overt action to **us** or to **our** agent that the **insured person** wishes this policy to be cancelled.

Delivery of such written notice by **us** to the **insured person** named in the declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

### Return of Premium

When this policy is cancelled, the premium paid beyond the date of cancellation will be refunded. The return premium will be pro rata. This means that **we'll** keep premium for only those days that **you** were protected.

If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us, we** will refund it within a reasonable time after the date cancellation takes effect.

## Nonrenewal

**We** may refuse to renew this policy only for one of the reasons referred to in the Cancellation Provision of this section. **We** may refuse to renew for one of the listed reasons by mailing to the **insured person** named in the declarations, at the address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy.

This provision does not apply if:

1.  **we** have indicated **our** willingness to renew and the **insured person** has failed to pay the premium by the due date; or

2.  the named **insured person** has indicated to **us** or **our** agent that the **insured person** does not wish the policy to be renewed.

Delivery of such written notice by **us** to the **insured person** named in the declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

## Concealment or Fraud

15



2013/08/16.002126.25.014

Under Section I - Property Protection, with respect to all **insured persons** covered under this policy, **we** provide no coverage for loss under Section I - Property Protection if, whether before or after a loss, one or more **insured persons** have:

1. intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

   relating to this insurance.

Under Section II - Personal Liability Protection, **we** do not provide coverage to one or more **insured persons** who, whether before or after a loss, have:

1. intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

   relating to this insurance.

## Changes

This policy and the declarations include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change. If any coverage **you** have under this policy is broadened by **us** without charge during the policy period, this policy will automatically provide the broadened coverage when effective in **your** state.

## Our Right to Recover Payment

After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under Section I if **you** have waived it in writing prior to loss. The **insured person** will do whatever is required to transfer this right to **us**.

This condition does not apply under Section II to Medical Payments to Others Coverage or Damage to Property of Others.

## Policy Period

This policy applies to losses, **bodily injury** or **property damage** which occur during the policy period.

---
## Optional Coverages
---

The following coverages apply to this policy only if they appear on the declarations page with an additional premium, when applicable.

---
## Additional Persons Covered
---

The definition of **insured person** in this policy includes the person or organization, if any, named on the declarations page with respect to:

Section I - Dwelling Coverage and Other Structures Coverage; and

Section II - Personal Liability Coverage and Medical Payments to Others Coverage, but only with respect to the **residence premises**

This coverages does not apply to **bodily injury** or personal injury to any employee arising out of, or in the course of, the employee's employment by the person or organization.

---
## Earthquake Coverage
---

For an additional premium, **we** cover direct and accidental loss to covered property caused by earthquake. This includes land shock waves or tremors before, during or after a volcanic eruption.

One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake.

The following is the only deductible that applies to each loss caused by earthquake.

**Deductible**

**We** will pay only that part of the loss, up to the limit of liability shown on the declarations page, in excess of the deductible shown on the declarations page. This deductible amount shall not be less than $250.00 and shall apply separately to loss under Dwelling, Other Structures and Personal Property Coverage.

**Special Exclusions**

**We** do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake.

**We** do not cover loss to exterior masonry veneer. The value of exterior masonry veneer shall be deducted before applying the deductible clause. For the purpose of this exclusion, stucco shall not be considered masonry veneer.



16

This coverage does not increase the amount of insurance stated in this policy.

---

## Loss Assessment

---

For an additional premium, the limit of liability for Additional Coverage - Loss Assessment in Section I and Section II is increased to the limit shown on the declarations page. But if **your** assessment results from a deductible in the insurance covering the Condominium Association, **we** will pay no more than $1,000.

All other policy provisions apply.

---

## Personal Injury

---

For an additional premium, the definition **bodily injury** is amended to include **personal injury** coverage.

**Personal injury** means injury arising out of one or more of the following offenses:

1. false arrest, detention, or imprisonment, or malicious prosecution;

2. libel, slander, or defamation of character; or

3. invasion of privacy, wrongful eviction or wrongful entry.

Section II exclusions do not apply to **personal injury**. **Personal Injury** Insurance does not apply to:

1. liability assumed by an **insured person** under any contract or agreement;

2. **personal injury** caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an **insured person**;

3. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an **insured person**;

4. **personal injury** arising out of **business** pursuits of an **insured person**; or

5. **personal injury** arising out of civic or public activities performed for pay by an **insured person**.

---

## Scheduled Personal Property

---

For an additional premium, **we** cover the following classes of personal property for which an amount of insurance is shown on the schedule. This coverage is subject to the Definitions used throughout this policy, Section I - Conditions, and General Policy Conditions applying to Section I and II and all provisions of this Optional Coverage.

- Jewelry, as scheduled.

- Furs and garments trimmed with fur or consisting principally of fur as scheduled.

- Cameras and equipment, as scheduled.

- Musical instruments and equipment, as scheduled.

- Silverware, silver-plated ware, goldware, gold-plated ware, and pewterware but excluding pens, pencils, flasks, smoking implements or jewelry as scheduled.

- Golf equipment, as scheduled.

- Firearms, as scheduled.

- Fine arts, as scheduled. This premium is based on **your** statement that the property insured is located on the **residence premises**.

  New Acquisitions:  If the **insured person** acquires during the term of this policy other objects of art, the provisions of this Optional Coverage shall apply for the **actual cash value** of the objects but not more than 25% of the amount of the insurance scheduled for fine arts, PROVIDED the **insured person** reports such additional objects within 90 days from the date acquired and pays additional premium from the date acquired.

- Stamp collections and related philatelic property, as scheduled.

- Coin and currency collections and related numismatic property, as scheduled.

**Newly Acquired Property**

With respect to jewelry, furs, cameras, and musical instruments, **we** cover newly acquired property of a class already insured for an amount not to exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less, provided **you** report this newly acquired item to **us** within 30 days of acquisition and pay the additional premium from the date acquired.

**Exclusions**

**We** promise to pay all direct and accidental losses to the personal property described except:

1. direct damage by wear and tear, deterioration, insects, vermin, or inherent vice;



17

2. loss caused by war (declared or undeclared), revolt, insurrection, rebellion or revolution; or

3. loss caused by nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these. Loss caused by nuclear action is not considered loss by perils of fire, explosion or smoke.

If fine arts are covered, the following additional exclusions apply:

1. loss caused by any repairing, restoration, or retouching process;

2. breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains, and similar fragile articles. We cover loss by breakage if caused by fire, lightning, aircraft, windstorm, malicious damage, theft, explosion, earthquake, flood, or collision, derailment, or overturn of conveyance; however only article(s) marked with a double asterisk (**) in the Scheduled Personal Possessions Schedule will be covered for breakage when an additional premium is indicated on your schedule; or

3. loss to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are covered by this policy.

If either of the classes of property, stamp collections, or coins and currency collections are covered, the following additional exclusions apply:

1. fading, creasing, denting, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature, gradual depreciation, or any damage from handling or being worked upon;

2. disappearance of individual stamps, coins, or other articles unless the item is described and scheduled with a specific amount of insurance, or unless the item is mounted in a volume and the pages to which it is attached is also lost;

3. loss to property in the custody of transportation companies or shipment by mail other than registered mail;

4. theft from any unattended automobile unless being shipped as registered mail; or

5. loss of or damage to any property described herein which is not an actual part of a stamp, money or numismatic collection.

## Conditions

Loss Clause

The amount of insurance under this Optional Coverage shall not be reduced except for a total loss of a scheduled article. We will refund the unearned premium applicable to such article after the loss or you may apply it to the premium due for the replacement of the scheduled article.

Loss Settlement

Covered property losses are settled as follows:

1. Fine arts - We will pay the amount shown for each scheduled article which is agreed to be the value of the article.

   In case of loss to a pair or set, we agree to pay you the full amount of the set as shown in the schedule and you agree to surrender the remaining article or articles of the set to us.

2. Golfer's equipment - Golf balls are covered only against loss by fire or burglary, if there are physical marks of forcible entry into the locker, room or building.

3. Musical instruments - If musical instruments are covered, you agree such instruments will not be played for pay.

4. Stamp collections or coin currency collections - In case of loss to any scheduled item, the amount to be paid will be determined in accordance with paragraph B5, Other Property.

   When coins or stamps are covered on a blanket basis, we shall pay the cash market value at time of loss, but not more than $1,000 on any unscheduled numismatic property nor more than $250 for any one stamp, coin, or individual article or any one pair, strip, block, series sheet, cover, frame, or card.

   We shall not pay a greater proportion of any loss on blanket property than the amount insured on blanket property bears to the cash market value at time of loss.

5. Other property - The value of the property insured is not agreed upon but shall be ascertained at the time of loss or damage. We will not pay more than the least of the following amounts:

   a) the actual cash value of the property at the time of loss or damage with proper deduction for depreciation;
   b) the amount for which you could reasonably be expected to have the property repaired to its condition immediately prior to loss;
   c) the amount for which you could reasonably be expected to replace the article with one substantially identical to the article lost or damaged; or
   d) the amount of insurance.



18

This condition does not apply to fine arts.

Loss to a Pair or Set

In case of loss to a pair or set, we may elect to:

1.  repair or replace any part to restore the pair or set to its value before the loss: or

2.  pay the difference between the **actual cash value** of the property before and after the loss.

This condition does not apply to fine arts.

Loss to Parts

In case of a loss to any part of covered property, consisting of several parts when complete, we shall pay only for the value of the part lost or damaged.

Territorial Limits

We cover the property described while it is anywhere in the world except fine arts are covered only while within the limits of the continental United States, the State of Hawaii, and Canada.

---

# Water Back Up And Sump Overflow

---

For an additional premium, we insure, up to the limit of liability on the declarations page, for direct physical loss, not caused by the negligence of any insured, to property covered under Section I - Property Protection caused by:

1.  water which backs up through sewers or drains; or

2.  water which overflows from a sump even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This endorsement does not increase the limits of liability for Dwelling, Other Structures, Personal Property or Additional Living Expense and Loss of Rents Coverages stated in the policy declarations.

**Special Deductible**

The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

We will pay only that part of the loss which exceeds $500. No other deductible applies to this coverage. This deductible does not apply with respect to Additional Living Expense and Loss of Rents Coverage.

**Section I - Exclusions**

Under Dwelling and Other Structures Coverages, mechanical breakdown is deleted, with respect to coverage for loss caused by overflow of sumps.

3.  water damage is deleted and replaced by the following:

    3.  water damage, meaning:

        a)  flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind:
        b)  water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.

    We do cover direct loss that follows, caused by theft, fire or explosion.

All other provisions of this policy apply.

---

# Personal Computer Coverage

---

For an additional premium, we cover your personal computer equipment as described below under property covered for loss caused by the Perils Insured Against. Our limit of liability for this coverage is the limit shown in the schedule for this coverage.

**Property Covered**

If owned by or leased to **you, we** cover:

1.  hardware, meaning electronic data processing equipment, components and connections and extensions; and

2.  software, meaning electronic data processing media and programs that **you** have bought and the instructions that came with the hardware and with the software.

This coverage applies to any legal use of the property described above to include:

1.  personal;

2.  **business;**

3.  professional; or

4.  occupational.

**Property not covered**



We do not cover hardware or software:

1. that is rented to others, or

2. that is held for rental.

## Personal Property Coverage

The 10% or $1,000 off-premises limit does not apply to this coverage.

## Deductible

No policy deductible applies to this coverage.

## Perils We Insure Against

We insure against risks of direct physical loss to hardware and software, unless excluded under the exclusion section of this coverage.

## Exclusions

We do not cover loss caused by:

1. mechanical breakdown, faulty construction, error in hardware or software design;

2. wear and tear, deterioration or any quality in property that causes it to damage or destroy itself;

3. rust, rot, mold or other fungi;

4. birds, rodents, vermin, insects or domestic animals;

5. war (declared or undeclared war), civil war, insurrection, rebellion, revolution, warlike act by military personnel, destruction or seizure or use for a military purpose, and any consequence of these. Discharge of a nuclear weapon will be deemed a warlike act, even if accidental;

6. nuclear reaction, radiation or radioactive contamination. All whether controlled or uncontrolled, or however caused. We do cover loss by fire, resulting from nuclear reaction, radiation, or radioactive contamination; and

7. **we do not cover loss of use, or indirect or consequential loss of any kind.**

## Other Insurance

If a loss is covered under both this coverage and the policy, the policy will pay only when the limit of this coverage has been exhausted.

All other provision of this policy apply.

This policy is signed by the President and Secretary of the insurance Company.

President

Secretary

20

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:      3500 Packerland Drive, DePere, WI 54115

Address of Defendant:    856 Meadow Wood Lane, Warminster, PA 18974

Place of Accident, Incident or Transaction: _____      *(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))      Yes    No    X

Does this case involve multidistrict litigation possibilities?      Yes ☐   No ☒ X

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
     Yes ☐   No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
     Yes ☐   No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
     Yes ☐   No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION

_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 10-16-13      _____      79070

                  Attorney-at-Law                       Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:    October 16, 2013      Chester F. Darlington, Esquire      79070

                                 Attorney-at-Law                    Attorney I.D.#

CIV. 609 (4/03)

OCT 16 2013