# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IDS PROPERTY CASUALTY INSURANCE COMPANY, | : : | CIVIL ACTION |
| Plaintiff, | : : | No. 13-6039 |
| v. | : : | |
| MICHAEL SCHONEWOLF, JR. et al., Defendants. | : : : | |
| ALLSTATE INSURANCE COMPANY, Plaintiff, | : : : | |
| v. | : : | |
| DAN LAGRECA et al., Defendants. | : : : | |

**MCHUGH, J.**                                                                                       **MAY 26, 2015**

## MEMORANDUM

This consolidated action is comprised of two suits by separate insurance companies seeking a declaration that they need not defend and indemnify their respective insureds. Both suits are predicated on an action now pending in the Superior Court of Camden County, arising out of an alcohol-fueled violent encounter. Both insurance companies provide homeowner's insurance to individual defendants in that action. Although I am mindful that courts should not lightly allow a wrongdoer to avoid responsibility by "drinking himself into insurance coverage,"[1] at this juncture I cannot rule out the possibility that coverage exists.

---

[1] State Farm Fire & Casualty Co. v. Estate of Mehlman, 589 F.3d 105, 114 (3d Cir. 2009).

## I. The Underlying Complaint

The duty to defend is a function of the relevant facts in the underlying complaint. John Sweeney, plaintiff in the underlying action, attended the WXTU 28th Anniversary Show at the Susquehanna Center in Camden, New Jersey, on June 2, 2012. Defendants in that lawsuit, Michael Schonewolf, Jr. and Dan Lagreca, who seek coverage in this case, had attended the concert along with three friends. All five were under the age of 21, but were allegedly permitted to engage in underage drinking and other unruly behavior. Sweeney pleads that he was "continuously and violently beaten and kicked about his head and body by . . . Michael Schonewolf, Jr., Dan Lagreca" and the other three men in an event-designated parking lot. Underlying Compl. ¶ 18. The underlying complaint does not provide any additional information about the circumstances surrounding the initiation of the conflict.

Count X of Sweeney's complaint against Schonewolf is cast as a claim sounding in negligence. After describing the attack, the complaint alleges the following:

> 124. The negligence, carelessness and recklessness on the part of Defendant, Michael Schonewolf, Jr., consisted of the following:
>
> (a) consuming alcoholic beverages unlawfully by not being of legal age knowing that it would cause significant impairment and lapse of judgment and control, all of which Defendant knew or should have known would pose a high degree of risk or injury and danger to other patrons;
>
> (b) becoming intoxicated/impaired which led Defendant to attack Plaintiff by kicking, hitting and punching him about his head and body that defendant knew or should have known would result in serious injury;
>
> (c) becoming intoxicated/impaired that led to violent and aggressive behavior toward Plaintiff;
>
> (d) creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured;

> (e) joining with other Defendants in creating, inciting and carrying out an altercation with plaintiff and other invitees that resulted in Plaintiff becoming seriously injured.

The complaint further alleges that Sweeney suffered injuries as a result of "the negligence, carelessness, recklessness and wantonness" of Schonewolf. <u>Id.</u> at ¶¶ 125-29.

IDS Property Casualty Insurance Company (IDS) insures Schonewolf under a homeowners' policy. IDS seeks a declaration that it does not have a duty to defend or indemnify Schonewolf in the underlying action. Up to this point, IDS has been providing a defense for Schonewolf in the underlying action.

As to Dan Lagreca, Count XI of Sweeney's underlying complaint sets forth allegations identical to those against Schonewolf. <u>Id.</u> at ¶¶ 130-37. Lagreca is an insured under a homeowner's policy issued by Allstate Insurance Company (Allstate). Allstate seeks a declaration that it does not have a duty to defend or indemnify Lagreca in the underlying action. In contrast to IDS, Allstate has not been providing a defense for Lagreca in the underlying action, leading Lagreca to assert counterclaims against Allstate for breach of contract and bad faith.

IDS has moved for summary judgment; Allstate has moved for judgment on the pleadings.

## II. IDS Property Casualty Insurance Company's Declaratory Judgment Claim With Regard to Michael Schonewolf

*A. The IDS Policy*

IDS issued a homeowners' insurance policy to Schonewolf's parents covering the relevant time period. Personal liability coverage under the contract is described as follows:

> We will pay all sums arising out of any one occurrence which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this policy. If a claim is made or suit is brought against the

3

insured person for liability under this coverage, we will defend the insured person
at our expense using the lawyers of our choice. We are not obligated to defend
after we have paid an amount equal to the limit of our liability. We may
investigated or settle any claim or suit as we think appropriate.

"Occurrence" under the policy is defined as:

[A]n accident which is unexpected or unintended from your standpoint resulting
in bodily injury or property damage during the policy period. It also includes
repeated or continuous exposure to substantially the same general harmful
conditions.

The policy also includes the following exclusion under Personal Liability Coverage and

Medical Payments to Others Coverage:

5. bodily injury or property damage expected or intended by one or more insured
persons, even if the bodily injury or property damage:
    a) is of a different kind, quality or degree than initially expected or
       intended; or
    b) is sustained by a different person, entity, real or personal property than
       initially expected or intended.

   B. *The Controlling Legal Principles*

In determining IDS' responsibility in this action,

[A]n insurer's duty to defend an action against the insured is measured, in the first
instance, by the allegations in the plaintiff's pleading . . . . In determining the
duty to defend, the complaint claiming damages must be compared to the policy
and a determination made as to whether, if the allegations are sustained, the
insurer would be required to pay [the] resulting judgment . . . . [T]he language of
the policy and the allegations of the complaint must be construed together to
determine the insurer['s] obligation.

Gene's Restaurant, Inc. v. Nationwide Ins. Co., 519 Pa. 306, 308, 548 A.2d 246, 247 (1988).

Based on this, "a carrier's duties to defend and indemnify an insured in a suit brought by a third

party depend upon a determination of whether the third party's complaint triggers coverage."

Mutual Benefit Ins. Co. v. Haver, 555 Pa. 534, 538, 725 A.2d 743, 745 (1999). "The duty to

defend is a distinct obligation, different from and broader than the duty to indemnify. Because

the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is

4

no duty to defend." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005). "As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." United Servs. Auto. Ass'n v. Elitzky, 517 A.2d 982, 985 (Pa. Super. Ct. 1986) (citing Vale Chemical Co. v. Hartford Acc. & Indem., 490 A.2d 896, 900 (Pa. Super. Ct. 1985)). Ambiguous terms in the insurance contract should be construed against the insurer. Id. at 986. Necessarily, therefore, the analysis must begin with an evaluation of the duty to defend.

    1. Are Schonewolf's Actions, as Pleaded in the Underlying Complaint, an Occurrence Under the Insurance Contract?

The policy at issue provides coverage for liability arising out of an "occurrence." The term "occurrence" is defined within the contract as an "accident which is unexpected or unintended" from the standpoint of the insured. The Pennsylvania Supreme Court has defined "accident" within an insurance contract as "an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 158, 938 A.2d 286, 292 (2007). "An injury therefore is not 'accidental' if the injury was the natural and expected result of the insured's actions." Id. In determining whether IDS has a duty to defend Schonewolf, I must view the events from the perspective of Schonewolf. See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) ("In determining whether [the plaintiff's] injuries resulted from an accident, we must view the operative events from [defendant's] perspective, for State Farm insured him not [plaintiff]."); Baumhammers, 595 Pa. at 159, 938 A.2d at 293 ("[W]e are required to determine whether, from the perspective of the insured, the claims asserted . . . present the degree of fortuity contemplated by the ordinary definition of 'accident.'").

Given the definition of "accident" in Pennsylvania, "an insured is not entitled to coverage for damages caused by his intentional assault on another person." Mehlman, 589 F.3d at 112 (citing Gene's Restaurant, 548 A.2d at 247 ("[A]n 'occurrence' must be an accident which a malicious, willful assault and beating could never be.")); Baumhammers, 595 Pa. at 156, 938 A.2d at 291 ("[Plaintiff] is correct that intentional acts of wrongdoing do not qualify as 'accidental' for the purposes of coverage."). As set forth above, the plaintiff in the underlying case carefully couched his complaint in language that avoids labeling Schonewolf's actions as intentional. Rather, he asserts that Schonewolf was negligent, careless, reckless, and at times, wanton. IDS argues that I should look past artful pleading, and recognize that the conduct that resulted in Sweeney being "continuously and violently beaten and kicked about his head and body," Underlying Compl. ¶ 18, was necessarily an intentional assault which would eliminate IDS' duty to defend.

A further principle of Pennsylvania law is that "[a]n actor is presumed to intend the natural and expected results of his actions." Mehlman, 589 F.3d at 114. The injuries suffered by Sweeney were certainly the natural and expected result of Schonewolf's violent acts, or at least to be expected or intended by one who is not intoxicated. That does not end the inquiry, however, because in Mehlman, the Court of Appeals held that "imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent." Id. at 112 (quoting Stidham v. Millvale Sportsmen's Club, 563, 618 A.2d. 945, 953 (Pa. Super. Ct. 1993)). An insured who is intoxicated may lack the ability to formulate the requisite intent to appropriately label his conduct as intentional. See Id. That rule is not without its limits. Intoxication would have to be so severe that a court could find that the assailant did not intend the natural and probable consequences of his actions. Id.

> The mere fact that an insured was intoxicated, however, will not prevent a court from finding that he intended the natural and probable consequences of his actions. It is entirely appropriate to recognize this limitation on the consequences of intoxication in coverage disputes, for alcoholic beverages certainly can contribute to the loosening of a person's inhibitions without eliminating his ability to intend to engage in harmful conduct. Indeed, the effect of the use of alcoholic beverages may contribute to a party formulating an intent to engage in anti-social conduct.

Id.

Mehlman also makes clear that under Pennsylvania law, an allegation of intoxication, by itself, does not require a court to treat an insured's conduct as an "accident," merely because the language of the underlying complaint labeled it as negligence. Id. at 114. On the facts of the case, citing the Pennsylvania Supreme Court's decision in Haver, the Third Circuit concluded that "Mehlman's intoxication did not render his attack on [plaintiff] unintentional, and the inclusion of two negligence causes of action cannot change that circumstance." Id. at 116.

Of relevance here, in Mehlman the Court of Appeals acknowledged but distinguished the Superior Court's decision in Stidham. Stidham arose out of a fatal shooting at a bar. The estate of the deceased victim secured a substantial verdict against the shooter and then garnished a claim against the shooter's homeowner's policy. The Superior Court concluded that even a guilty plea in the criminal action did not conclusively establish the assailant's intent to shoot and kill the victim, because there was a basis on which to conclude that severe intoxication eliminated his ability to form an intent. As characterized by the Third Circuit in Mehlman, coverage existed because Stidham had alleged his assailant "was in the midst of an alcoholic blackout and had lost awareness of his actions." 589 F.3d at 114.

The complaint in this case falls between the allegations in Mehlman and Stidham. Though the complaint in Mehlman indicated he was drunk at the time of the assault, "the injured party [did] not make allegations indicating that an insured's intoxication prevented him from

7

intending the consequences of his behavior . . . ." Mehlman, 589 F.3d at 115. In contrast, the underlying complaint here specifically pleads that "[t]he negligence, carelessness and recklessness on the part of Defendant, Michael Schonewolf, Jr., consisted of the following: consuming alcoholic beverages . . . knowing that it would cause significant impairment and lapse of judgment and control . . . ." Compl. ¶ 61(a). Here, if Schonewolf were so intoxicated as to experience a lapse of control, the act could conceivably fall outside the realm of what was expected or intended.

Mehlman further cautions that a court must look to all the indicia of intent, such as statements made by the insured, in order to determine whether or not intent existed in spite of the intoxication: "Such a statement [indicating intent], like other indicia of intent—including an insured's intoxication—is merely one factor that a court should consider in determining whether the insured intended to cause the results of his or her actions." 589 F.3d at 114-115. Thus, in one of the cases where the Superior Court declined to find coverage, the insured had remarked "I told you I would get the son-of-a-bitch." Nationwide Mutual Ins. Co. v. Hassinger, 473 A.2d 171, 173-74 (Pa. Super. Ct. 1984). In another, State Farm Mutual Auto. Insurance Co. v. Martin, 680 A.2d 66 (Pa. Super. Ct. 1995), the insured repeatedly crashed his truck into his estranged wife's house, and later told police he had "aimed" at her but he "hoped that she was all right." 680 A.2d at 67. Here, the details surrounding the incident as pleaded in the underlying complaint do not as conclusively establish an intent by Schonewolf to cause the injury in light of his intoxication.

An insurer's duty to defend the insured is broad, and "arises whenever an underlying complaint may 'potentially' come within the insurance coverage." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). "In determining the existence of a duty to

defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Id. "If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside of the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims . . . ." State Farm Fire & Cas. Co. v. Dunleavy, 197 F. Supp. 2d 183, 187 (E.D. Pa. 2001). If the underlying complaint avers any facts at all that could potentially support recovery under the policy, the duty to defend will exist. Nationwide Ins. Co. v. Glynn, No. 02-3740, 2003 WL 21116933, at *3 (E.D. Pa. May 13, 2003) (quoting TIG v. Nobel Learning, No. 01-4708, 2002 WL 1340332, at *5 (E.D. Pa. June 18, 2002)).

While the complaint is admittedly vague, there is a possibility that Schonewolf's actions could be classified as something other than intentional conduct, if the evidence shows that he was so intoxicated that he was unable to form the requisite intent. As stated by the Court of Appeals, the "[q]ualification of a particular incident as an accident seems to depend on two criteria: 1) the degree of foreseeability, and 2) the state of mind of the actor in intending or not intending the result." Mehlman, 589 F.3d at 111. Given the widest possible reading, the underlying complaint leaves open this possibility.

IDS argues that Haver and Mehlman empower a court to ignore the allegations of negligence and recklessness where the conduct is clearly intentional. Even accepting that interpretation as accurate, construing the underlying complaint liberally, I am unable to rule out the possibility that the conduct may not have been intentional given Schonewolf's intoxication. In Stidham, the Superior Court left the door open to coverage in cases involving intoxication, and in Mehlman, the Court of Appeals squarely placed its foot in that door, holding it open. Facts bearing on his level of intoxication and its effect on his control may certainly come out in

discovery in the underlying action, but I am bound to the averments in underlying complaint in determining this action. Schonewolf's age is also relevant to this analysis, including the fact that his unlawful ingestion of alcohol was, in the first instance, also negligent conduct on his part.

As a general rule, a court interpreting an insurance contract seeks to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. Baumhammers, 595 Pa. at 155, 938 A.2d at 290. It is unlikely the parties expected an alcohol-fueled assault would fall within the realm of homeowner's insurance. Nonetheless, Mehlman makes clear that there are circumstances under Pennsylvania law where the intoxication of an insured can negate intent to a point where the insured's actions qualify as an "accident," as the term is understood in Pennsylvania homeowner's insurance contracts. As noted above, the complaint here pleads less than the "alcoholic blackouts" in Stidham, but more than the mere fact of intoxication in Mehlman. Given that I must construe the allegations liberally and resolve doubts in favor of coverage, I conclude that the language stating that Schonewolf, as an underage drinker, had "consum[ed] alcoholic beverages . . . knowing that it would cause significant impairment and lapse of judgment and control" is enough to leave open the possibility that the impairment and lapse in judgment and control was so severe as to negate intent.

It bears reminder that an insurer's duty to defend exists only "until the insurer can confine the claim to a recovery that the policy does not cover." United Servs. Auto. Ass'n, 517 A.2d at 985. Should facts arise that demonstrate that Schonewolf was not so intoxicated as to negate his intent, IDS may renew this Motion for Summary Judgment.

      2.      Are Schonewolf's Actions, as Pleaded in the Underlying Complaint, an Excluded Bodily Injury Under the Insurance Contract?

The IDS policy also includes a specific exclusion for "bodily injury or property damage expected or intended by one or more insured persons." IDS concedes that what was expected or

10

intended must be viewed from the standpoint of the insured. Intent, in this context, means "that the actor desired to cause the consequences of his act or that he acted knowing that the consequences were substantially certain to result." United Servs. Auto. Ass'n, 517 A.2d at 986. "In [Pennsylvania], the exclusionary clause applies only when the insured intends to cause a harm. Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage." Id. at 987 (citing Mohn v. American Casualty Co. of Reading, 458 Pa. 576, 326 A.2d 346 (1974)).

Based on the analysis above, I cannot say that bodily injury was intended or expected by Schonewolf in light of his intoxication. IDS is therefore bound to defend Schonewolf until it can "confine the claim to a recovery that the policy does not cover." United Servs. Auto. Ass'n, 517 A.2d at 985. IDS' Motion for Summary Judgment will be denied with respect to IDS' duty to defend, without prejudice to resubmission. I will stay the action with respect to IDS' duty to indemnify pending further developments of the underlying state proceeding.

### III. Allstate Insurance Company's Declaratory Judgment Claims With Regard to Dan Lagreca and Accompanying Counterclaims

*A. Insurance Contract*

Allstate issued a Deluxe Homeowners Insurance Policy to Dan Lagreca's parents covering the relevant time period. Losses covered by the contract are described as follows:

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which insured person legally becomes obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy.

Additionally, the term "occurrence" is defined as:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

The insurance contract also describes the losses it does not cover as follows:

> 1.   We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person. This exclusion applies even if:
>
>> a) such insured person lacks the mental capacity to govern his or her own conduct;
>>
>> b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
>>
>> c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

### B. Standard of Review in Motion for Judgment on the Pleadings

In deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the controlling standard is the same as under Fed. R. Civ. P. 12(b)(6). Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). As such, the Court "must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." Id. "[J]udgment will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (citing Society Hill Civic Association v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).

### C. Discussion

1. Are Lagreca's Actions, as Pleaded in the Underlying Complaint, an "Occurrence" Under the Insurance Contract?

The clause in the Allstate insurance contract explaining what is covered by the policy, as well as the definition of "occurrence," is substantively identical to the clause in the IDS action analyzed above. Furthermore, the allegations in the underlying complaint against Lagreca are identical to those against Schonewolf. Accordingly, the same analysis set forth above applies to

this contract: Lagreca's actions as pleaded in the underlying complaint fall under the definition of "occurrence" set forth by the insurance contract. See supra section II, C, 1.

    2.    Are Lagreca's Actions, as Pleaded in the Underlying Complaint, an Excluded Bodily Injury Under the Insurance Contract?

The Allstate insurance contract has an additional exclusion. The policy explicitly refuses coverage for "any bodily injury or property damage intended, or which may be expected to result from the intentional or criminal acts or omissions of, and insured person. This exclusion applies even if: such insured person lacks the mental capacity to govern his or her conduct. . . ." Analytically, this provision represents two separate exclusions which need to be addressed individually: (1) bodily injury intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any insured person; and (2) bodily injury intended by, or which may reasonably be expected to result from the criminal acts or omissions of, any insured person.

    a)    Bodily injury intended by, or expected to result from the intentional acts or omissions

Preliminarily, as discussed above, it cannot be said that the bodily injury caused by Lagreca's actions was intended, because the underlying complaint is not clear about the extent to which Lagreca was intoxicated, and the extent to which intoxication interfered with his ability to formulate intent. The broad language of the exclusion is enough to give one pause, but in the final analysis it is triggered by "intentional" or "intended" conduct. Although the exclusion purportedly applies even where the insured lacks the mental capacity to govern his or her conduct, it is clear that a bodily injury cannot be labeled "intentional" or "intended" if there was no intent, and the contract employs those terms.

13

Intoxication remains relevant to intent, and "[i]f the actor lacks the ability to formulate an intent, the resulting act cannot be intentional." Melhman, 589 F.3d at 112. It cannot definitively be said that the injuries Lagreca caused by his actions were expected to result from his intentional conduct, primarily because the court cannot yet label with certainty his violent acts as *intentional* in light of the fact that Lagreca was intoxicated at the time.

The same analysis applicable to Schonewolf applies to Lagreca. The last undisputedly intentional act that the underlying complaint alleges Lagreca undertook before becoming intoxicated was the decision to engage in the unlawful consumption of alcohol. I cannot determine on the pleadings whether bodily injury (of any type) was an expected result of that consumption, regardless of whether this is an objective or subjective question. This exclusion will not discharge Allstate's duty to defend Lagreca at this stage of the litigation.

        b)      Bodily injury intended by, or expected to result from the criminal acts or omissions

The Allstate contract also excludes bodily injury intended by or expected to result from criminal acts of the insured. Simple assault in Pennsylvania, which Allstate contends Lagreca committed, is found when one:

    (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

    (2) negligently causes bodily injury to another with a deadly weapon;

    (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

    . . . .

18 Pa. C.S.A. § 2701. Allstate also cites to aggravated assault under 18 Pa. C.S.A. § 2702.

The materials currently before this Court make no mention of any criminal charges having been brought with regard to this matter, let alone any convictions. The Allstate policy, however, explicitly states that the criminal act exclusion applies "regardless of whether or not such insured person is actually charged with or convicted of a crime." In effect, therefore, Allstate asks me to rule whether Lagreca's act was criminal solely based on the underlying complaint in this action.

Such inquiry would require a determination of Lagreca's *mens rea* which cannot be accomplished on the pleadings. Were I to adopt the *mens rea* set forth in the underlying complaint—negligence, carelessness and recklessness—his conduct would not certainly qualify as simple assault. It is not clear he was acting recklessly rather than negligently, and there is no allegation that he utilized a deadly weapon. To apply the statutory definition would require me to discredit the underlying complaint and draw conclusions as to Lagreca's state of mind, in the absence of an evidentiary record.

Allstate points to Allstate Ins. Co. v. Burrough, 120 F.3d 834, 839 (8th Cir. 1997), as an example of how to apply the criminal act exclusion in the absence of a developed record or conviction. There, however, the admitted facts satisfied all elements of the crime. "[I]t is undisputed that Burrough furnished a .22 caliber handgun to Hauser, who at the time was a minor. It is also undisputed that no responsible adult consented to the transfer. Consequently, Burrough's act of giving the handgun to Hauser satisfied all the elements of the criminal offense of furnishing a deadly weapon to a minor." See also Cont'l Ins. Co. v. Kovach, No. 05-1152,

2007 WL 2343771, at *11 (W.D. Pa. Aug. 14, 2007). No determination of *mens rea* was required.

All of the other opinions from the Eastern District of Pennsylvania, both those cited by Allstate, as well those the Court has located on its own, deal with situations in which the defendant or defendants had already pleaded guilty or had been convicted of the crime under which the insurer sought to exclude the act from coverage. See, e.g., Allstate Ins. Co. v. Williams, No. 13-3048, 2014 WL 4682022, at *4 (E.D. Pa. Sept. 22, 2014) ("The criminal acts exclusion applies based on the crimes to which the defendants pled guilty, regardless of whether Mr. Williams shot Mr. Bates negligently or intentionally."); Allstate Ins. Co. v. Wells, No. 08-05294, 2009 WL 2137236, at *4 (E.D. Pa. July 15, 2009) ("Furthermore, striking the head of a man with great force is a criminal act to which Mr. Wells pled guilty and for which he received a sentence of incarceration. That criminal act is just what the policy excludes."); Allstate Ins. Co. v. Hopfer, 672 F. Supp. 2d 682, 690 (E.D. Pa. 2009) ("Timothy Hopfer's conviction for Drug Delivery Resulting in Death establishes not only that Timothy could reasonably expect injury to result from his criminal act of giving Dilaudid to Ms. Tagert, but also that by doing so, he disregarded an extremely high risk that injury would result."); Allstate Ins. Co. v. Ervin, No. 05-02800, 2006 WL 2372237, at *4 (E.D. Pa. Aug. 14, 2006) ("The Policy does not cover bodily injury that results from the intentional and criminal acts of an insured person and, as a result of the criminal convictions of Defendants Doug Ervin and Daniel Ervin for simple assault."); Allstate Ins. Co. v. Woods, No. 07-1451, 2008 WL 961240, at *5 (D.N.J. Apr. 8, 2008) ("It is beyond cavil that Ethan Woods committed a criminal act— he pled guilty to Third Degree Aggravated Assault and there was a factual basis

16

established for that plea."). One opinion from this Court even notes that a criminal act exception did not apply because "the Defendants were never convicted of, nor charged with, any crimes or violations of any laws." CGU Ins. v. Tyson Assoc., 140 F. Supp. 2d 415, 421 (E.D. Pa. 2001).

It is troubling that actions which would usually be deemed criminal might qualify for coverage despite this exclusion. But the alternative of essentially convicting Lagreca of simple assault, a crime that involves a determination of *mens rea*, that should ordinarily be determined on the basis of a developed factual record, is even more troubling. An insurer is bound to defend the insured "until the insurer can confine the claim to a recovery that the policy does not cover." United Servs. Auto. Ass'n, 517 A.2d at 985. The Motion for Judgement on the Pleadings will be denied. This Motion may be renewed should facts become apparent that Lagreca's actions satisfy the requisite elements of a crime in Pennsylvania.

*3. Lagreca's Counterclaims*

Lagreca brings two counterclaims against Allstate based on its refusal to provide a defense: (1) Breach of Contract and (2) Bad Faith pursuant to 42 Pa. C.S.A. § 8371. In determining that Allstate currently maintains the duty to defend Lagreca in the underlying action, Allstate's Motion for Judgement on the Pleadings with regard to the counterclaim for breach of contract will be denied. The Motion will also be denied as to the bad faith claim, to be reassessed with a more complete factual record. See Liberty Ins. Corp. v. Keck, No. 11-1242, 2011 WL 3666597, at *5 (E.D. Pa. Aug. 22, 2011).

**IV.     Conclusion**

On the record as it currently stands, both IDS and Allstate have a duty to defend their respective insureds in the underlying action. It is too early to determine whether a duty to indemnify exists in this case. An appropriate order follows.

                                          /s/ Gerald Austin McHugh
                               United States District Court Judge